UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CARL HILL, JANICE HILL,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>AUTO OWNERS INSURANCE CO.,<br><br>                    Defendant. | 5:14-CV-05037-KES<br><br>**ORDER ON PLAINTIFFS' MOTION<br>TO COMPEL**<br>[DOCKET NO. 43] |

**INTRODUCTION**

This matter is before the court on the amended complaint of plaintiffs Carl and Janice Hill, alleging that defendant Auto Owners Insurance Co. breached its insurance contract with the Hills, failed in bad faith to pay insurance benefits to the Hills, and engaged in unfair trade practices in their dealings with the Hills. See Docket No. 19. The Hills seek compensatory damages, punitive damages, and attorney's fees. Id. Jurisdiction is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000. Id. See 28 U.S.C. § 1332.

Plaintiffs filed a motion to compel, seeking an order from the court requiring defendant to disgorge certain documents requested by plaintiffs in discovery. See Docket No. 43. Defendant resists the motion. See Docket No. 47. The district court, the Honorable Karen E. Schreier, referred plaintiffs'

motion to compel to this magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A) and the court's October 16, 2014 standing order.

## FACTS

### A.    Background Facts

Plaintiffs Carl and Janice Hill live in a home in Rapid City, South Dakota. They purchased homeowners insurance for that home from defendant Auto Owners in 2006.  In May, 2013, the Hills opted to purchase replacement-cost coverage for their roof.

On July 8, 2013, the Hills submitted an insurance claim to defendant for hail damage sustained in a storm two years earlier, on June 24, 2011. Defendant hired Dakota Claims to adjust the Hills' damage and Dakota Claims sent Steve Wolff to inspect the roof on July 10, 2013.  Although Wolff acknowledged that the metal vents on the Hills' roof sustained hail damage, he opined that the roof itself sustained no hail damage.  Accordingly, defendant's claims handler in charge of the Hills' claim, Daniel Highstreet, sent the Hills a letter notifying them that defendant would not be paying anything on their claim.

Another hail storm occurred on July 20, 2013, which the Hills documented.  Two days later, Dakota Claims sent another adjuster, Mike Kirkeby, to inspect the Hills' roof in connection with the Hills' earlier claim. Kirkeby opined that there had not been any damaging hail storms in the Hills' part of town for 14 years, even though defendant replaced the roof of one of the

Hills' neighbors due to hail damage.  Mr. Highstreet again sent the Hills a letter denying their claim.

On July 31, 2013, the Hills filed a second claim for coverage based on the July 20 hail storm.  Apparently, defendant sent another Dakota Claims adjuster, who also opined that the shingles on the Hills' roof had not be damaged.  Mr. Highstreet sent the Hills a letter denying any coverage for their second claim.

The Hills asked defendant to reconsider.  Thereafter, defendant hired Larry Hermansen, an engineer, to inspect the Hills' roof.  Mr. Hermansen filed a report on September 11, 2013, concluding that, although the metal vents on the roof had been damaged by hail, the shingles on the roof were undamaged.

The Hills sued defendant in the instant lawsuit on May 15, 2014.  After the filing of the suit, the Hills hired Paul Brenkman, a licensed independent claims adjuster and general building contractor, to inspect the Hills' roof. Mr. Brenkman inspected the Hills' roof and found hail damage to the roof. Mr. Brenkman recommended that defendant replace the Hills' entire roof.

After this lawsuit was underway, defendant hired an expert for the litigation, Richard Herzog of Haag Engineering.  Herzog found 100 damaged shingles on the Hills' roof and another 20 damaged shingles on the garage. Herzog opined there had been so many hailstorms in the Rapid City area, including evidence of multiple hail storms at the Hills' residence, that Herzog could not assign the damage it observed on the Hills' roof to any particular storm.  Based on Mr. Herzog's findings, defendant paid the Hills' claim for

3

damage to the roof of their house and garage.  This payment was made

sometime after the instant motion to compel was filed.

**B.    Disputed Discovery Requests**

There are only two discovery requests at issue in the Hills' motion to

compel.  Request for the production of documents number 2 and number 5.

Request number 2 and defendant's response to that request are as follows:

**Request 2:**

All "personnel files" of all personnel involved with Plaintiffs' claims
for hail damage to the roof of their home, and all supervisors in the
chain of command above those personnel, up to the head of the
claims department.

"Personnel files" here means any and all documents related to the
individual's employment relationship with, and job performance
for, Defendant.  This includes but is not limited to documents
concerning the person's:  employment application and hiring
process; job changes; performance evaluations (formal or informal,
whether relayed to the employee or not); quality control audits or
reviews; identification of training or training materials received;
compensation history; bonus recommendations or evaluations; and
information provided to the person concerning compensation or
company policies or procedures.

This request includes documents that meet the definition of
"personnel files" given here, even if they are contained only in
emails or otherwise are not included in a special location
designated for a "human resources file" or similar collection of
documents.

**Response to Request 2:**

Personnel files are neither relevant to plaintiffs' contract cause of
action for policy benefits for the insurance claims submitted by
plaintiffs in July 2013, or a defense to that cause of action, and are
not reasonably calculated to lead to the discovery of evidence
admissible in connection with that cause of action.  Auto-Owners
asserts that discovery which may relate to non-contract claims
asserted in this action should be stayed pending resolution of the
contract claim for policy benefits, and any dispositive motions

4

directed to those non-contract claims.  If and when discovery may
be appropriate on non-contract claims, Auto-Owners objects as
follows:

Auto-owners objects that the request is overbroad because it seeks
personnel files for employees who had no knowledge of, or
involvement in, the handling of plaintiffs' insurance claims at
issue.  Dan Highstreet was the only Auto-Owners employee who
was involved in the handling of these two insurance claims and
who made any decisions in connection with the claims.  The
request should be limited to the personnel files for Dan Highstreet
and Ashley Carswell, his supervisor.  The highly personal and
private nature of information in a personnel file compels careful
consideration of this request and limitation to no more than that
clearly material to the claims or defenses asserted.
Auto-Owners objects that the request is overbroad because it seeks
many documents contained in personnel files or related to an
individual's employment which have no arguable relevance to the
action:  health information, health insurance information, issues
or disputes unrelated than [sic] the handling of claims, tax
information and elections, and the like.  The request should be
limited to performance evaluations, any lists of training or training
materials received, and compensation (including any bonuses or
evaluation for bonuses).

Auto-Owners objects that the request is overbroad in that it is not
limited in time.  The insurance claims at issue in this case were
handled in July, August, and September, 2013.  The request
should be limited to documents covering or pertaining to the year
in which the claims were handled, and at most two years prior—in
this case, to the three year period from January 1, 2011, through
December 31, 2013.

See Docket No. 43-3 at pp. 17-18.

The other discovery request at issue in the Hills' motion to compel is

request for the production of documents number 5.  That request and

defendant's response thereto are as follows:

**Request 5:**

All documents related to the compensation, or factors that affect
compensation, for employees or contractors involved with Plaintiff's

roof-hail claims, or for their supervisors, up to the head of the claim department.

"Compensation" here includes but is not limited to bonuses, commissions, salary, compensation increases or decreases, benefits, incentives, stock options, or profit-sharing. The scope of this request is January 1, 2004, to present.

**Response to Request 5:**

The requested documents are not relevant to plaintiffs' contract cause of action for policy benefits for the insurance claims submitted by plaintiffs in July 2013, or a defense to that cause of action, and are not reasonably calculated to lead to the discovery of evidence admissible in connection with that cause of action. Auto-Owners asserts that discovery which may relate to non-contract claims asserted in this action should be stayed pending resolution of the contract claim for policy benefits, and any dispositive motions directed to those non-contract claims. If and when discovery may be appropriate on non-contract claims, Auto-Owners objects as follows:

Auto-Owners objects that the request is overbroad because it seeks documents relating to compensation for employees who had no knowledge of, or involvement in, the handling of plaintiffs' insurance claims at issue. Dan Highstreet was the only Auto-Owners employee who was involved in the handling of these two insurance claims and who made any decisions in connection with the claims. The request should be limited to the compensation for Dan Highstreet and Ashley Carswell, his supervisor.

Auto-Owners objects that the time period specified in this request is overbroad. The insurance claims at issue in this case were handled in July, August, and early September, 2013. The request should be limited to the year in which the claims were handled, and at most two years prior—in this case, to the three year period from January 1, 2011, through December 31, 2013.

See Docket No. 43-3 at p. 20.

Defendant filed its responses set forth above on September 11, 2014.

Nine days later, on September 18, 2014, defendant filed a motion for summary

judgment on the Hills' bad faith claim, arguing that its decision to deny

coverage was based on the opinions of three separate adjusters, so the decision

could not have been made with knowledge that there was coverage, or with reckless disregard to whether there was coverage.  See Docket No. 21.  For similar reasons, defendant seeks summary judgment on the Hills' claim for punitive damages because its reliance on the three adjusters' opinions vitiates the necessary malice to support punitive damages.  Id.  Defendant also moved to dismiss the Hills' unfair trade practices claim on the grounds that their complaint fails to state a claim upon which relief can be granted.  See Docket No. 24.  Finally, four days later, on September 22, 2014, defendant moved for a separate trial on the Hills' breach of contract claim, asking the district court to stay discovery until that trial is over and the coverage issue decided.  See Docket No. 26.  All three of these motions are still pending as of the date of this opinion.

The Hills now move to compel defendant to produce documents in response to their requests number 2 and 5.  Defendant resists the motion.

## DISCUSSION

### A.    Meet and Confer Requirement

Rule 37(a)(1) requires the parties to meet and confer to attempt to resolve discovery disputes prior to filing a motion to compel.  See FED. R. CIV. P. 37(a)(1).  In addition, this court's local rules impose a similar requirement.  See DSD LR 37.1.  The parties discussed the discovery dispute in this matter thoroughly and on multiple occasions over the course of three months. Defendant does not dispute that the Hills have satisfied the meet and confer requirement.  The court finds this prerequisite satisfied.

**B.     Substantive Law Applicable to the Hills' Claims**

To prevail on their breach of contract claim, the Hills must show (1) an enforceable promise; (2) that defendant breached that promise; and (3) they suffered damages as a result of defendant's breach.  See Guthmiller v. Deloitte & Touche, LLP, 2005 S.D. 77, ¶ 14, 699 N.W. 493, 498.

The Hills' unfair trade practices claim is premised on SDCL §§ 58-33-5 and 58-33-46.1.  Those statutes provide money damages and attorney's fees as a remedy if a person makes a false or misleading statement misrepresenting the terms of any policy issued or the benefits and advantages promised under the policy, or uses a name or title of a policy or class of policies which misrepresents the true nature of the policy.  Id.

To prove a bad faith cause of action, the Hills must show that defendant had no reasonable basis for denying their claim for insurance benefits, and that defendant acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits.  See Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649.  "In a bad faith case, 'the insured must show an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for the denial.' " Mudlin v. Hills Materials Co., 2007 S.D. 118, ¶ 6, 742 N.W.2d 49, 51 (brackets in original) (quoting Phen v. Progressive N. Ins. Co., 2003 S.D. 133, ¶ 24, 672 N.W.2d 52, 59).  Bad faith is an issue of fact for the jury.  Isaac v. State Farm Mutual Auto. Ins. Co., 522 N.W.2d 752, 758 (S.D. 1994).  The jury

should determine whether the insurer acted in bad faith "based on the facts and law available to [the insurer] at the time it made its decision to deny coverage." Id.

In awarding punitive damages, a jury is to evaluate:  (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.  Roth v. Farner-Bocken Co., 2003 S.D. 80, ¶ 46, 667 N.W.2d 651, 665-66 (citing State Farm v. Campbell, 538 U.S. 408, 418 (2003)).  In evaluating these factors, it is relevant whether the harm that was caused to the Hills resulted from a company policy or practice.  Id. at ¶ 65, 667 N.W.2d at 669.  In addition, because laws regarding business practices vary from one state to another, the Supreme Court has cautioned that evidence of a company's practices which are relevant to punitive damages should be limited to evidence of practices in the same state as the plaintiff.  Campbell, 538 U.S. at 419-24.

## C.    Scope of Discovery in Federal Cases

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in

9

the action.  Relevant information need not be admissible at the
trial if the discovery appears reasonably calculated to lead to the
discovery of admissible evidence.  All discovery is subject to the
limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an
evasive or incomplete response is made, the party requesting the discovery is
entitled to move for a motion compelling disclosure after having made a good
faith effort to resolve the dispute by conferring first with the other party.  See
Fed. R. Civ. P. 37(a)(1).

The scope of discovery under Rule 26(b) is extremely broad.  See 8
Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-
37 (1970) (hereinafter "Wright & Miller").   The reason for the broad scope of
discovery is that "[m]utual knowledge of all the relevant facts gathered by both
parties is essential to proper litigation.  To that end, either party may compel
the other to disgorge whatever facts he has in his possession."  8 Wright &
Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct.
385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between
discoverability and admissibility of evidence.  Fed. R. Civ. P. 26(b)(1), 32, and
33(a)(2).  Therefore, the rules of evidence assume the task of keeping out
incompetent, unreliable, or prejudicial evidence at trial.  These considerations
are not inherent barriers to discovery, however.

As stated above, Federal Rule of Civil Procedure 26 permits discovery of
anything relevant to a claim or defense at issue in the case.  The Advisory

Committee's note to the 2000 amendments to Rule 26(b)(1) provides guidance

on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that
> discovery goes beyond material relevant to the parties' claims or
> defenses, the court would become involved to determine whether
> the discovery is relevant to the claims or defenses and, if not,
> whether good cause exists for authorizing it so long as it is relevant
> to the subject matter of the action.  The good-cause standard
> warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the
> actual claims and defenses involved in the action.  The dividing
> line between information relevant to the claims and defenses and
> that relevant only to the subject matter of the action cannot be
> defined with precision.  A variety of types of information not
> directly pertinent to the incident in suit could be relevant to the
> claims or defenses raised in a given action.  For example, other
> incidents of the same type, or involving the same product, could be
> properly discoverable under the revised standard. . . . In each
> instance, the determination whether such information is
> discoverable because it is relevant to the claims or defenses
> depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to
> confine discovery to the claims and defenses asserted in the
> pleadings, and signals to the parties that they have no entitlement
> to discovery to develop new claims or defenses that are not already
> identified in the pleadings. . . . When judicial intervention is
> invoked, the actual scope of discovery should be determined
> according to the reasonable needs of the action.  The court may
> permit broader discovery in a particular case depending on the
> circumstances of the case, the nature of the claims and defenses,
> and the scope of the discovery requested.

<u>See</u> Fed. R. Civ. P. 26(b)(1) Advisory Committee's Notes, 2000 Amendment.

The same Advisory Committee's note further clarifies that information is

discoverable only if it is relevant to the claims or defenses of the case or, upon

a showing of good cause, to the subject matter of the case.  <u>Id.</u>  Relevancy is to

be broadly construed for discovery issues and is not limited to the precise

issues set out in the pleadings.  "Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  E.E.O.C. v. Woodmen of the World Life Ins. Soc'y, No. 08:03-CV-165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case, and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action.  See Brown Bear v. Cuna Mut. Grp., 266 F.R.D. 310, 319 (D.S.D. 2009) (citations omitted).

The party seeking "discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Once the requesting party has established the relevancy of the discovery it seeks, the burden shifts to the party opposing the discovery to show why the discovery may not be had.  Penford Corp. v. Nat'l Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).  The opposing party must

establish grounds for not providing the discovery that are specific and factual; the party cannot meet its burden by making conclusory allegations as to undue burden, oppressiveness or overbreadth.  <u>Burns v. Imagine Films Entm't Inc.</u>, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).  A party asserting privilege as an obstacle to discovery must:  (1) expressly make the claim of privilege, and (2) describe the discovery being withheld in sufficient detail (without revealing the privileged information itself) to allow others to evaluate the validity of the privilege.  <u>See</u> FED. R. CIV. P. 26(b)(5)(A).

Just because discovery is not within a party's immediate possession does not mean that the discovery is off-limits.  Rule 34 allows discovery of documents and tangible things in a party's possession, "custody" or "control."  <u>See</u> FED. R. CIV. P. 34(a)(1).  The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34.  <u>See</u> 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, <u>Fed. Practice & Procedure</u>, § 2210, at 397 (2d ed. 1994).  If a party "has the right, and the ready ability, to obtain copies of documents gathered or created by its" agents pursuant to work done for the party, "such documents are clearly within the [party's] control."  <u>American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus</u>, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing <u>Poole ex rel. Elliott v. Textron, Inc.</u>, 192 F.R.D. 494, 501 (D. Md. 2000); and <u>Poppino v. Jones Store Co.</u>, 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

**D.      The Hills' Request for Production Number 2**

> **1.      The Court Overrules the Objection Based on Defendant's Request for a Stay**

Defendant has posited four objections to discovery request number 2. The first is that the documents requested are relevant to the Hills' bad faith and unfair trade practices claims and not to the Hills' contract claim. Defendant takes the position that no discovery should occur on these claims until the district court resolves the dispositive motions [Docket Nos. 21 & 24] as to these claims.

This court is not in a position to rule on those dispositive motions which are pending before the district court as they have not been referred to this magistrate judge.  Further, the court cannot guess and will not intimate what the resolution of those motions will look like.[1]  And, since the motion for a stay of discovery has not been referred either, this court is not in a position to resolve that issue—and must be careful not to rule on the motion in a *de facto* manner by its handling of the present motion to compel.

The state of the record is this:  a Rule 16 scheduling order was issued by the district court which set August 17, 2015, as the deadline for discovery.  <u>See</u>

---

[1] The court notes, however, that the question of whether an insurance company denied benefits in bad faith is a quintessential issue of fact for the jury, even when the contract interpretation issue is one of first impression in the jurisdiction if the question of coverage was not "fairly debatable." <u>Bertelsen v. Allstate Ins. Co.</u>, 2009 S.D. 21, ¶¶ 20-21, 764 N.W.2d 495, 500 (<u>Bertelsen</u> I); <u>Isaac v. State Farm Mutual Auto. Ins. Co.</u>, 522 N.W.2d 752, 758 (S.D. 1994). The fact that an insurance company may have been unaware of applicable law is not grounds for summary judgment in favor of the insurance company. <u>Bertelsen v. Allstate Ins. Co.</u>, 2013 S.D. 44, ¶ 20, 833 N.W.2d 545, 555 (<u>Bertelsen</u> II).

Docket No. 17.  That order has not been vacated.  No order staying discovery has been entered, despite the fact that defendant's motion requesting such a stay has been pending for several months.  Finally, the district court chose to refer the Hills' motion to compel to this magistrate judge for decision just last month.  This court must take the record as it finds it.  Accordingly, the court concludes that discovery should go forth until and unless arrested by the district court.  This court therefore overrules defendant's objection that discovery should be stayed until the dispositive motions are decided.

### 2.    Overbreadth as to Employees

Defendant seeks to restrict the Hills to receiving the personnel files of only Mr. Highstreet and Ms. Carswell, Highstreet's immediate supervisor.  Defendant argues that no other employee had any involvement with the Hills' insurance claims.  The Hills request all personnel files in the chain of command above Mr. Highstreet up to and including the head of the claims department.

Defendant's position that no other employee had anything to do with the handling of the Hills' claims is basically an assertion that those personnel files are irrelevant.  Here, the Hills point out, they are not seeking just information about the specific facts of the handling of their own claim.  Rather, they seek evidence of incentives and disincentives placed upon claims handlers by those higher up in the chain of command that would tend to affect decisions the claims handlers make in individual claims.  That would include bonuses and disincentives applied to those at the head of the claims department, as it would

15

be entirely rational to suppose that such motivational pressure brought to bear on the head of a department would be passed on to those employees in his or her supervision.

The court begins with the basic premise that personnel files in bad faith actions have routinely been found to be relevant and discoverable.  Lyon v. Bankers Life & Cas. Co., CIV. 09-5070-JLV, 2011 WL 124629 at *8 (D.S.D. Jan. 14, 2011)).  "Personnel files may reveal an inappropriate reason or reasons for defendant's action with respect to plaintiff's claim or an 'improper corporate culture.' "  Id.  Furthermore, in cases where the insurance company tried to limit discovery to the claims handler and his or her immediate supervisor, that attempt has been rejected.  See Nye v. Hartford Acc. & Indem. Co., 2013 WL 3107492 at *11-12, Civ. No. 12-5028 (D.S.D. June 18, 2013); Kirschenman v. Auto-Owners Ins., 280 F.R.D. 474, 482-83 (D.S.D. 2012).

Here, the Hills have more than demonstrated the relevance of the personnel files at issue.  As they assert, "personnel files contain job applications and resumes, which sometimes show the company hiring people who advertised their prowess at saving money on claims.  Personnel files contain performance reviews that show the criteria on which employees are evaluated, which are often improper.  Personnel files frequently show claim handlers being given explicit instructions to save on claims.  Personnel files show incentives for claim handlers."  See Docket No. 43 at p. 25.  Furthermore, they point out that "entry level employees [such as claims handlers] are frequently not made privy to strategies and plans of upper level management.

16

They are usually paid differently, evaluated differently, and given different goals and targets.  The incentive plans available to upper level employees are almost always different than those available to lower level personnel." Id. at p. 36.

In another bad faith case litigated in this district, the evidence of institutional pressure that was brought to bear on an insurance company's claims handlers was not in the personnel file of the claims handler herself, nor was it in her immediate supervisor's file; rather, the entirely relevant evidence was found in the personnel file of the regional claims manager.  See Fair v. Royal & Sun Alliance, 278 F.R.D. 465, 474-76 (D.S.D. 2012).  See also Docket No. 43-38 (Trial Exhibit from Torres v. Travelers Ins., Civ. No. 01-5056 showing evidence of bonus program in senior claims manager's file).  In the Fair case, there were only three employees in the chain of command between the head of the claims department and the claims handler, undermining any claim of overbreadth or undue burden.  Fair, 278 F.R.D. at 474-76.  Furthermore, the Hills are entirely correct to point out that the higher up the chain of command one finds evidence of improper intent, the greater the likelihood that the decisions made in the Hills' case were the result of company policy or custom, which in turn bears on punitive damages.  See Roth, 2003 S.D. 80, ¶ 50, 667 N.W.2d at 666.

Thus, the Hills have made their initial showing of the relevance of the discovery they request.  See St. Paul Reinsurance Co., 198 F.R.D. at 511.  The burden then shifts to defendant to "show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is

17

overly broad, burdensome, or oppressive." Id. at 512.  Defendant has not done so.  It has not demonstrated specific facts showing irrelevance.  Defendant relies solely on the assertion that other persons up the chain of command from Highstreet and his supervisor did not make decisions about the Hills' specific claims.  As indicated by the above discussion, the scope of relevance in this case is not so restricted.

The court grants the Hills' request for documents number 2.  However, the court authorizes defendant to redact any sensitive information from the documents produced such as addresses, phone numbers, dates of birth, and social security numbers.

### 3.    Overbreadth as to Irrelevant Documents in Files

Defendant's next objection is that there are many documents in a personnel file which are not relevant to the Hills' claims.  Defendants give, as examples, documents relating to health insurance, retirement accounts, leave time and the like.  This objection is overruled.  As can be seen from the definition of "personnel file" posited by the Hills in association with their request number 2, they have defined "personnel file" so as to omit any of the types of documents defendants give as examples of irrelevant documents.

### 4.    Overbreadth as to Time Frame Covered by Request

Although this objection was lodged in defendant's response to the Hills' request number 2, defendant does not argue this point in its brief in opposition to the Hills' motion to compel.  The court deems this objection waived.

18

**E.     The Hills' Request for Production Number 5**

**1.     The Court Overrules the Objection Based on Defendant's Request for a Stay**

Defendant has posited three objections to discovery request number 5. The first is that the documents requested are relevant to the Hills' bad faith and unfair trade practices claims and not to the Hills' contract claim. Defendant takes the position that no discovery should occur on these claims until the district court resolves the motions for summary judgment as to them. This objection is overruled for the same reasons the identical objection to request number 2 was overruled, as discussed above in Section D.1.

**2.     Overbreadth as to Employees**

This objection is overruled for the same reasons that the same objection was overruled in connection with request number 2. The reader is referred to Section D.2 above.

**3.     Overbreadth as to Time Frame Covered by Request**

This objection is overruled for the same reasons that the same objection was overruled in connection with request number 2. The reader is referred to Section D.4 above.

**F.     Sanctions**

Rule 37 mandates that the court "must" grant sanctions in the form of expenses, including attorney's fees, if a motion to compel is granted, unless the position of the party resisting discovery was "substantially justified" or "other circumstances make an award of expenses unjust." See FED. R. CIV. P. 37(a)(5)(ii) and (iii).  Here, the primary thrust of defendant's resistance to the

discovery requested was the pendency of its motion to stay discovery.  The court finds it appropriate to defer any determination as to whether sanctions are appropriate on the instant motion until after the district court decides the three pending motions made by defendant (motion for summary judgment, motion to dismiss, and motion to stay—Docket Nos. 21, 24 & 26).  If, after the district court issues its decision on those motions, the Hills wish to move for an award of attorney's fees and costs in bringing this motion, the Hills may do so and defendant may respond accordingly.

## CONCLUSION

Based on the foregoing law, facts, and analysis, it is hereby

ORDERED that the motion to compel filed by Carl and Janice Hill [Docket No. 43] is granted in its entirety.  Defendant shall produce the documents requested in the Hills' request for documents numbers 2 and 5 within 14 days from the date of this opinion.

DATED March 20, 2015.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge