# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## WESTERN DIVISION

| | | |
|---|---|---|
| CARL AND JANICE HILL, | ) | File No. CIV 14-5037 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | OBJECTION TO THE |
| v. | ) | MAGISTRATE JUDGE'S |
| | ) | ORDER ON PLAINTIFFS' |
| AUTO-OWNERS INS. CO., | ) | MOTION TO COMPEL |
| | ) | (DOCKET NO. 50) |
| Defendant. | ) | |
| | ) | |

Pursuant to Federal Rule of Civil Procedure 72(a), Defendant Auto-Owners Insurance Company respectfully objects to the Magistrate Judge's March 20, 2015 Order on Plaintiffs' Motion to Compel (Docket No. 50). For the reasons that follow, Auto-Owners requests that the Court overturn the Magistrate Judge's ruling and deny Plaintiffs' Motion to Compel (Docket No. 43).

### INTRODUCTION AND SUMMARY

Plaintiffs submitted insurance claims to Auto-Owners under their homeowners' policy for damage to shingles caused by hail storms in Rapid City, South Dakota. Third-parties engaged by Auto-Owners inspected Plaintiffs' roof *four different times* and did not find compensable hail damage to the shingles. Thus, Auto-Owners initially declined to pay to re-shingle Plaintiffs' house. A subsequent inspection, conducted after at least one intervening storm, did find hail damage to the shingles, and so Auto-Owners promptly paid the full cost to re-shingle Plaintiff's home and detached garage, less the deductible, for a total claim payment of $5,978.

Despite the relatively simple, straightforward nature of the claims at issue in this case, Plaintiffs requested, (and in a good faith effort to comply, Auto-Owners has produced or agreed

to produce) a very large number of documents, including: (1) Plaintiffs' complete claim files; (2) all other documents and communications related to Plaintiffs or the hail-damage claims; (3) comprehensive documentation pertaining to the third-party adjusters who inspected Plaintiffs' roof and their relationships with Auto-Owners; (4) wide-ranging documentation regarding Auto-Owners' claim handling policies and training materials; (5) every claim file for all other claims in which Auto-Owners denied coverage for hail damage to a roof in South Dakota, North Dakota, Minnesota, Iowa, Nebraska, Wyoming, and Montana between January 2013 and October 2014; (6) every claim file for all other claims involving hail roof damage in Rapid City, South Dakota, whether denied or granted, between January 2013 and October 2014; (7) every claim file for claims in which Hermanson Egge Engineering (one of the third-parties hired to inspect Plaintiffs' roof) provided a report; and (8) personnel and compensation documents for the Auto-Owners employees who *were* involved with or had knowledge of Plaintiffs' claims.  (*See* Exhibit A, attached, for a complete list of documents Auto-Owners has agreed to produce.)

Despite the substantial number of documents Auto-Owners agreed to produce and the relatively small value of the insurance claims at issue, Plaintiffs moved to compel production of additional personnel and compensation documents for several Auto-Owners employees who had no involvement in, or knowledge of, Plaintiffs' insurance claims (*see* Docket No. 43).  Plaintiffs' requests for sensitive, internal personnel and compensation documents for employees that had ***nothing to do with Plaintiffs' claims*** amount to nothing more than a speculative and unreasonable effort to support Plaintiffs' unfounded supposition that systemic policies might somehow explain why Plaintiffs' claims were denied (never mind the fact that four separate inspectors found no compensable hail damage).

Although production of similar documents have at times been found to be proper in bad faith cases, several factors (not addressed by the Magistrate Judge) compel the Court in ***this*** case to follow other decisions which have refused to require production of these documents.  These factors include (a) the actual facts of this case, *i.e.*, alleged hail damage to a roof that was assessed by multiple third-party inspectors who all reported no compensable hail damage, (b) the absence of anything other than unadulterated speculation implicating the requested documents; (c) the highly-sensitive and personal nature of the requested documents; and (d) mandatory proportionality principles under Federal Rule of Civil Procedure 26(b)(2)(C).  The generalized platitudes and documents from other cases which filled Plaintiffs' motion and reply brief provided the Magistrate Judge no basis to conclude that the documents at issue in this motion in this case – of a personal, sensitive nature – are discoverable.  Indeed, "[m]ere incantations that an opponent has acted in bad faith will not convert a simple contract lawsuit into a license to burden or harass one's adversary.  Conclusory claims of bad faith may not be the bases for conducting marginally relevant discovery which is by its nature burdensome."  *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 125 (M.D.N.C. 1989).  The Court should overturn the Magistrate Judge's order permitting this improper discovery and deny Plaintiffs' motion to compel.

## THE RELEVANT FACTS

On July 8, 2013, Plaintiffs submitted a claim to Auto-Owners under their homeowners policy, asserting that the roof of their home in Rapid City, South Dakota, had suffered damage from hail in a storm occurring on June 24, 2011, more than two years prior to the date the claim was submitted.[1]  Plaintiffs' homeowners policy provided replacement-cost insurance coverage for property damage caused by covered perils (including hail storms), subject to certain

---

[1] The facts set forth in this section of the response are those set out in Auto-Owners Motion for Summary Judgment on Claims for Bad Faith and Punitive Damages (Docket No. 21), and Defendant's Statement of Facts in Support of its Motion for Summary Judgment (Docket No. 22)("SOF").

exclusions, limits, and deductibles.  To determine whether Plaintiffs' claim was payable, Auto-Owners needed to assess whether (and to what extent) the roof was in fact damaged by hail. Because Auto-Owners did not have a claim office in Rapid City, Auto-Owners engaged Dakota Claims Service of Rapid City (a company with experience inspecting hail-damage claims) to inspect Plaintiffs' roof.

Dakota Claims inspected the roof on July 10, 2013.  Dakota Claims subsequently reported to Auto-Owners that certain aluminum vent covers and caps and part of the front door trim displayed damage consistent with small-size hail, but estimated the costs of repair to be less than the $1,000 deductible applicable under Plaintiffs' policy.  The inspection report concluded that "***the shingles did not show any hail damage***."  (Emphasis added.)  To the extent that shingles in some areas of the roof were damaged, the report concluded that such damage was due to age, and other factors not related to hail.

On July 16, 2013, in reliance on Dakota Claims report, the Auto-Owners claim employee assigned to the Hills' claim, Daniel Highstreet, sent Plaintiffs a letter informing them that the cost to repair the limited hail damage to the vent covers and caps on their roof and the front door trim was less than the $1,000 policy deductible and that Auto-Owners was therefore "unable to make any payment for the claim."

Plaintiffs requested a reinspection, which was completed by a different employee of Dakota Claims on July 19, 2013.[2]  On July 22, 2013, Mr. Highstreet sent Plaintiffs a follow-up letter regarding their claim based on the reported June 24, 2011 storm, informing them that, after a reinspection, the damage identified was still under their $1,000 deductible and the shingles on the west and east slopes showed "weathering & deterioration ***but no hail damage***."  (Emphasis

---

[2] The Magistrate Judge erroneously stated that this second inspection was performed on July 22, 2013, two days after another hail storm occurred in Rapid City.  (*See* Docket No. 50 at 2.)

added.)  Because Dakota Claims reported no hail damage to the shingles, Mr. Highstreet's letter informed Plaintiffs that Auto-Owners was denying their claim.

On July 31, 2013, Plaintiffs submitted a second claim, this time asserting that their roof had suffered hail damage in a storm on or about July 20, 2013.  Auto-Owners again assigned Dakota Claims to inspect Plaintiffs' roof and prepare another report.  Dakota Claims inspected the property again (with a different employee) and issued a report to Auto-Owners, concluding that the only hail damage to the roof was the same damage reported in the prior report (*i.e.*, the previously-reported damage to the vent covers and caps and front door trim had not been repaired).  Dakota Claims again reported that the shingles on the roof "***did not show any hail damage***," and that the damage to the shingles on the west and east slope of Plaintiffs' roof was due to age, and other factors not related to hail.  (Emphasis added.)

Based on the report, Mr. Highstreet sent Plaintiffs a letter on August 22, 2013, on behalf of Auto-Owners, denying the second claim because, as had been reported after the first claim, the only hail damage to the metal vent covers and caps and front door trim did not exceed the $1,000 policy deductible.

Dakota Claims reported to Auto-Owners that Plaintiffs appeared to be upset with Dakota Claims' findings.  Accordingly, Auto-Owners authorized Dakota Claims to engage Larry Hermanson, a licensed engineer with Hermanson Egge Engineering in Rapid City, to do another inspection of the shingles on Plaintiffs' roof.

Mr. Hermanson inspected the roof and, on September 11, 2013, sent a report to Auto-Owners.  Like the three inspectors from Dakota Claims, Mr. Hermanson concluded that "***there is no hail damage to the shingles***."  (Emphasis added.)  He agreed that the aluminum roof vents and furnace vents had hail damage, consistent with the Dakota Claims' reports.  He also

concluded that the shingles on the roof that were damaged were "curling and blistering because of improper attic ventilation," and that "[g]rain loss on the asphalt shingle surface is a result of excessive heat below the attic space."

Unhappy with the claim decisions, Plaintiffs sued Auto-Owners for breach of contract, bad faith, and unfair trade practices on May 16, 2014.  (*See* Docket No. 1.)  In support of the bad faith claim, Plaintiffs alleged that Dakota Claims and Larry Hermanson were biased and "would look for ways to help Auto-Owners deny or limit payment for Plaintiff's roof."  (Docket No. 19 ¶¶ 21, 26-28, 33, 40-41.)

On October 23, 2014, after the lawsuit was filed, Richard Herzog, a forensic engineer and meteorologist employed by Haag Engineering, inspected Plaintiffs' roof at Auto-Owners' request.[3]  Haag Engineering is the pre-eminent forensic engineering firm in the country, and has established a broadly-accepted roof inspection and certification program, teaching inspectors among other things how to recognize hail damage to asphalt shingles.  Although Mr. Herzog noted the same non-hail related deterioration as had the original inspections, he found hail damage to certain shingles on Plaintiffs' roof.

Mr. Herzog could not attribute the observed hail damage to any particular storm and noted that there had been several hailstorms after the July 2013 storm that Plaintiffs most recently claimed caused damage to their roof.  The hail damage was rendered more difficult to recognize by the seriously deteriorated condition of Plaintiffs' roof.  Mr. Herzog concluded that most of the damage appearing in pictures submitted by Plaintiffs' counsel and relied on by Plaintiffs' expert was not caused by hail – actual hail damage to asphalt shingles is very different in appearance and much more subtle than Plaintiffs' counsel naively asserts.  The irregularities

---

[3] Mr. Herzog was retained by Auto-Owners. The facts in this paragraph and the following paragraph are taken from Auto-Owners' Reply in support of its Motion for Summary Judgment on Claims for Bad Faith and Punitive Damage (Docket No. 39) and supporting Statement of Facts (Docket No. 40).

which Plaintiffs asserted to be "obvious" hail damage are actually, as noted in the original inspection reports submitted by Dakota Claims and Hermanson Egge Engineering, deterioration of the shingles due to their age, quality, and the surrounding conditions of the roof and structure.

Based on Mr. Herzog's findings, Auto-Owners promptly paid Plaintiffs' claims for damage to the roof of both the house and garage, without condition or request for a release.  The roof has now been replaced, and the full amount requested has been paid, less deductible.  The total amount paid by Auto-Owners was $5,978.

## THE RELEVANT PROCEDURAL HISTORY

Plaintiffs served their initial document requests on August 7, 2014.  On August 18, Auto-Owners served its initial disclosure in this matter.  With its disclosure, Auto-Owners produced its claim files for the claims made by Plaintiffs.  On September 11, Auto-Owners served its initial response to Plaintiffs' document requests.  On September 18, Auto-Owners filed a motion for summary judgment on Plaintiff's claims for bad faith and punitive damages (Docket No. 21); on September 22, Auto-Owners filed a motion seeking, inter alia, a stay of discovery related to the bad faith and punitive damages claims until determination of its pending motion for summary judgment.  Both motions remain pending.

During October, November and December, 2014, through a series of letters, e-mails and telephone calls, counsel for the parties conferred on the scope of the document requests and the objections raised by Auto-Owners, and reached agreement on all but two of Plaintiffs' requests.  A list of the extensive documents Auto-Owners agreed to produce is attached hereto as Exhibit A.  In particular, based on Plaintiffs' vague allegations of bias on the part of Dakota Claims and Larry Hermanson, Auto-Owners agreed to produce:

1. Auto-Owners' complete file for Dakota Claims and Larry Hermanson.  This includes all documents pertaining to Dakota Claims or Mr. Hermanson or

7

their relationship with Auto-Owners, including documents concerning the contractors' hiring, job assignments, performance analyses, reports, or evaluations, quality control audits or reviews, identification of training or training material received, and compensation-related documents.

2. All claim files for other claims in which Auto-Owners denied coverage for hail damage to the roof of residential or commercial property in South Dakota, North Dakota, Minnesota, Iowa, Nebraska, Wyoming, and Montana between January 1, 2013, and October 1, 2014.

3. All claim files for hail roof damage claims in Rapid City, South Dakota (whether paid or denied) that were closed between January 1, 2013 and October 1, 2014.

4. All claim files for other claims in which Larry Hermanson or Hermanson Egge Engineering provided a report.

### THE DISCOVERY AT ISSUE

Despite Auto-Owners agreement to produce a vast array of documents, disputes remained regarding two of Plaintiffs' document requests (requests 2 and request 5). The first of the two requests at issue is as follows:

**Request 2:**

All "personnel files" of all personnel involved with Plaintiffs' claims for hail damage to the roof of their home, and all supervisors in the chain of command above those personnel, up to the head of the claims department.

"Personnel files" here means any and all documents related to the individual's employment relationship with, and job performance for, Defendant. This includes but is not limited to documents concerning the person's: employment application and hiring process; job changes; performance evaluations (formal or informal, whether relayed to the employee or not); quality control audits or reviews; identification of training or training materials received; compensation history; bonus recommendations or evaluations; and information provided to the person concerning compensation or company policies or procedures.

This request includes documents that meet the definition of "personnel files" given here, even if they are contained only in emails or otherwise are not included in a special location designated for a "human resources file" or similar collection of documents.

Auto-Owners objected to this request, inter alia, as follows:

8

Auto-Owners objects that the request is overbroad because it seeks personnel files for employees who had no knowledge of, or involvement in, the handling of plaintiffs' insurance claims at issue. Dan Highstreet was the only Auto-Owners employee who was involved in the handling of these two insurance claims and who made any decisions in connection with the claims. The request should be limited to the personnel files for Dan Highstreet and Ashley Carswell, his supervisor. The highly personal and private nature of information in a personnel file compels careful consideration of this request and limitation to no more than that clearly material to the claims or defenses asserted.

Auto-Owners objects that the request is overbroad in that it is not limited in time. The insurance claims at issue in this case were handled in July, August, and early September, 2013. The request should be limited to documents covering or pertaining to the year in which the claims were handled, and at most two years prior – in this case, to the three year period from January 1, 2011, through December 31, 2013.

Accordingly, and subject to other objections not presently at issue, Auto-Owners agreed to produce the requested documents for its employees Daniel Highstreet and Ashley Carswell (Mr. Highstreet's immediate supervisor) – the only Auto-Owners' employees directly involved with Plaintiffs' claims. No one else within the scope of request 2 had any involvement or any knowledge of Plaintiffs' claims.

The second request at issue is as follows:

**Request 5:**

All documents related to the compensation, or factors that affect compensation, for employees or contractors involved with Plaintiff's roof-hail claims, or for their supervisors, up to the head of the claim department.

"Compensation" here includes but is not limited to bonuses, commissions, salary, compensation increases or decreases, benefits, incentives, stock options, or profit-sharing. The scope of this request is January 1, 2004, to present.

Auto-Owners objected, inter alia, as follows:

Auto-Owners objects that the request is overbroad because it seeks documents relating to compensation for employees who had no knowledge of, or involvement in, the handling of plaintiffs' insurance claims at issue. Dan Highstreet was the only Auto-Owners employee who was involved in the handling of these two insurance claims and who made any decisions in connection

with the claims.  The request should be limited to the compensation for Dan Highstreet and Ashley Carswell, his supervisor.

Again, subject to other objections not presently at issue, Auto-Owners agreed to produce the requested compensation documents for Mr. Highstreet and Ms. Carswell.  Again, no one else within the scope of request 5 had any involvement with Plaintiffs' claims.

On December 18, 2014, Plaintiffs filed their motion to compel (Docket No. 43), seeking to require Auto-Owners to produce personnel and compensation documents for other Auto-Owners' employees, up to and including the head of the claims department.  (*See* Docket No. 43 at 23-37.)  Auto-Owners opposed the motion.  (*See* Docket No. 47.)

Following referral of the motion pursuant to 28 U.S.C. § 636(b)(1)(A) (*see* Docket No. 49), Magistrate Judge Veronica Duffy granted Plaintiffs' motion in its entirety.  (*See* Docket No. 50.)  Judge Duffy ordered Auto-Owners to produce all documents requested in requests 2 and 5 within 14 days of her Order.[4]  (*Id.* at 20.)

OBJECTION

The district court may modify or set aside any portion of a magistrate judge's ruling in either of two circumstances: (1) when it is clearly erroneous in fact; or (2) when it is contrary to law.  28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); *see also Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007).  A magistrate judge's order must be set aside if the Court is "left with the definite and firm conviction that a mistake has been committed."  *Sprint Commc'ns Co. L.P. v. Native Am. Telecom, LLC*, No. 4:10-CV-04110-KES, 2015 WL 1268299, at *1 (D.S.D. Mar. 19, 2015) (citation omitted).

---

[4] In order not to delay the litigation and because a motion to stay the Magistrate Judge's Order might not be decided in time, Auto-Owners is complying with the Magistrate Judge's Order subject to its objections lodged herein.  Although Auto-Owners is producing the requested documents to Plaintiffs (subject to a protective order to preserve confidentiality), it will request return of the documents to the extent the Court overturns or limits the Magistrate Judge's Order compelling production.

Here, the Magistrate Judge's Order granting Plaintiffs' motion to compel should be set aside for four reasons: (I) as clearly erroneous and contrary to law because Plaintiff did not (and cannot) make the requisite showing to obtain sensitive personnel and compensation documents for Auto-Owners' employees who were not involved in Plaintiffs' insurance claims; (II) as contrary to law because the Magistrate Judge failed to apply mandatory proportionality principles under Federal Rule of Civil Procedure 26(b)(2)(C); (III) as clearly erroneous based on the Magistrate Judge's finding that request 2 defined "personnel file" to exclude undisputedly-irrelevant documents; and (IV) as clearly erroneous and contrary to law based on the Magistrate Judge's conclusion that Auto-Owners waived its overbreadth (time) objection to request 2.

## I.  **Plaintiffs Did Not (And Cannot) Make The Necessary Showing To Discover Sensitive Personnel And Compensation Documents For Auto-Owners' Employees Who Were Not Involved In, And Had No Knowledge Of, Plaintiffs' Hail Claims.**

The Magistrate Judge's conclusion that Plaintiffs "more than demonstrated the relevance" of the personnel and compensation documents at issue was clearly erroneous and contrary to law. (Docket No. 50 at 16, 19.)  The Magistrate Judge's conclusion was based entirely upon the speculative and *wholly-unsupported* argument of counsel about what *might* be in these documents:

> [P]ersonnel files contain applications and resumes, which *sometimes* show the company hiring people who advertised their prowess at saving money on claims. Personnel files contain performance reviews that show the criteria on which employees are evaluated, which are *often* improper.  Personnel files *frequently* show claim handlers being given explicit instructions to save on claims. Personnel files show incentives for claim handlers. . . . [E]ntry level employees [such as claim handlers] are *frequently* not made privy to strategies and plans of upper level management.  They are *usually* paid differently, evaluated differently, and given different goals and targets.  The incentive plans available to upper level employees are *almost always* different than those available to lower level personnel.

11

(Docket No. 50 at 16 (emphasis added, citations omitted).)  At its core, Plaintiffs position (to which the Magistrate agreed) is that, as long as a plaintiff's complaint includes allegations of bad faith, regardless of nature or degree, sensitive personnel and compensation documents are discoverable as a matter of course – even for employees who were not involved in, and have no knowledge of, claim administration or the decision-making process.  If accepted, Plaintiffs' arguments would swallow up any discovery limitations in bad faith cases and could be used to support virtually unlimited discovery based on the same kind of speculation presented here.  This is not the law.

Although the scope of discovery is broad, it is not so loose that the parties should be "permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."  *In re Surety Ass'n of America*, 388 F.2d 412, 414 (2d Cir. 1967) (citations omitted).  As the Eighth Circuit has held, "[s]ome threshold showing of relevance ***must be made before*** parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (emphasis added).  Federal courts have repeatedly emphasized that parties ***may not*** "engage in merely speculative inquiries in the guise of relevant discovery."  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990); *see also Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent . . . an undirected rummaging through bank books and records for evidence of some unknown wrongdoing."); *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996) (explaining that discovery is not to be used to "investigate mere speculation").[5]  These courts (including courts in the Eighth

---

[5] *See also In re Parcel Tanker Shipping Servs. Antitrust Litig.*, No. 303MD1568AVC, 2005 WL 3360584, at *5 (D. Conn. Nov. 9, 2005) (declining to authorize discovery based on "pure speculation"); *Collens v. New York*,

Circuit) routinely deny discovery based on mere suspicions and speculation. *See, e.g.*, *Boar, Inc. v. County of Nye*, No. 11-15979, 2012 WL 6012467, at *3 (9th Cir. Dec. 3, 2012) (district court properly denied discovery into confidential personnel files based on "broad, unsupported claims regarding *possible* value" (internal quotations and citation omitted; emphasis in original)); *Bituminous Materials, Inc. v. Rice Cnty.*, *Minnesota*, 126 F.3d 1068, 1071 n.2 (8th Cir. 1997) (district court properly barred discovery from county commissioner where plaintiffs sought to discover facts for their "unsupported allegations of personal animus"); *Micro Motion*, 894 F.2d at 1326-27 (district court properly quashed deposition because "requested information is not relevant . . . if the inquiry is based on the party's mere suspicion or speculation").

The holdings in the above cases make perfect sense.  As the *Micro Motion* court explained, a party should not be permitted to abuse the discovery process for the purpose of seeking facts in an attempt to substantiate suspicions and speculation:  "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.  That the discovery might uncover evidence showing that a plaintiff has a legitimate claim *does not justify* the discovery request."  *Id.* at 1327 (internal citations omitted).

*Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.*, No. CIV. 96-1041 (WGB), 1998 WL 684263, at *1 (D.N.J. Apr. 1, 1998), is particularly instructive.  For many years, Bamberger purchased acrylic scrap from Rohm and Haas.  However, beginning in 1989, Rohm and Haas sold its scrap to a different company (Resin), despite the fact that Bamberger offered higher prices for the scrap.  *Id.* at *1. As a result, Bamberger suspected that Resin had "done something

---

222 F.R.D. 249, 253 (S.D.N.Y. 2004) (courts "should not grant discovery requests based on pure speculation"); *Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) ("Discovery requests cannot be based on pure speculation or conjecture."); *Sommer v. Aronow*, No. 95 CIV. 9230 (LMM), 1996 WL 399820, at *3 (S.D.N.Y. July 16, 1996) (denying motion to compel because requested information was "based on the party's mere suspicion or speculation").

improper in order to lure [Rohm and Haas] to shift business from Bamberger to Resin." *Id.*  In an attempt to prove this theory, Bamberger served Rohm and Haas with very broad discovery requests.  In response, the Magistrate Judge "stated that he would not order such broad discovery on Bamberger's mere speculation." *Id.*  On appeal, Bamberger argued that the Magistrate Judge "improperly required plaintiff to prove its case before being entitled to relevant discovery." *Id.* at *2.  In rejecting this claim, the District Court held that discovery is not intended to "permit[] the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Id.* (citation omitted).

These principles are even more important in the context of sensitive personnel and compensation documents.  Courts have long recognized that employees have a legitimate expectation that their employers will keep the contents of their personnel files confidential.  *See Boar*, 2012 WL 6012467, at *3 (courts must balance need for confidential personnel files with "fundamental right to privacy"); *Tierno v. Rite Aid Corp.*, No. C 05-02520 THE, 2008 WL 2705089, at *5 (N.D. Cal. July 8, 2008) (noting "deeply invasive" nature of discovery request seeking salary information and denying request because the employees' privacy interest outweighed the movant's need for discovery); *Case v. Platte County*, No. 8:03-cv-160, 2004 WL 1944777, at *2 (D. Neb. June 11, 2004) (similar); *In re One Bancorp Sec. Litig.*, 134 F.R.D. 4, 12 (D. Me. 1991) (noting "strong public policy against disclosure of personnel files").

Consistent with these policy concerns, the court in *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 580 (E.D. Pa. 1989), held that the discovery of personnel records may be permissible *only if*: "(1) the material sought is 'clearly relevant,' and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable."  In *Sunrise*, the moving party sought employment records from an auditor to show negligence and wrongdoing by the

auditing company. *Id.*  The court held that "general allegations of wrongdoing do not, standing alone," justify discovery. *Id.*  Instead, the court noted that any connection between the personnel records and the allegations of negligently conducted audits, fraud, and conspiracy was at best "speculative." *Id.*  The court went on to hold that, in order for the personnel records to be "clearly relevant," the moving party must "make specific allegations or some initial showing, based on deposition testimony or other evidence, that [the company] acted negligently in using particular employees on the [particular] audits."[6]  *Id.*

Here, Plaintiffs did not (and cannot) offer ***any*** evidence, testimony, or reasoning (beyond mere speculation) to support their document requests and have not (and cannot) show that the personnel and compensation documents of Auto-Owners employees who were not involved in Plaintiffs claims are "clearly relevant."  Instead of offering the requisite "threshold showing," Plaintiffs (and the Magistrate Judge) rely upon extensive supposition from Plaintiffs' counsel about what ***might*** exist in the requested personnel and compensation documents.  (*See* Docket No. 50 at 16 (personnel files "***sometimes*** show . . ."; personnel files contain performance reviews which state evaluation criteria "which are ***often*** improper"; personnel files ***frequently*** show . . . .").  Put simply, Plaintiffs (and the Magistrate Judge) believe sensitive personnel and compensation documents of employees not involved in Plaintiffs' claim are discoverable, not because Plaintiffs have even a shred of evidence to support an argument that they contain

---

[6] Other courts are in accord.  *See Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997) ("[T]he proper balance, between the privacy interests of non-party third persons, and the discovery interests of a party litigant, is to assure that only those portions of the pertinent personnel files, which are clearly relevant to the parties' claims, are open to disclosure . . . ."); *see also Tolz v. Geico Gen. Ins. Co.*, No. 08-80663-CIV, 2010 WL 298397, at *3 (S.D. Fla. Jan.19, 2010) (production of personnel file improper in bad-faith action where no evidence it is necessary for a specific purpose); *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (personnel files should be produced only if "(1) the material sought is clearly relevant and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable"); *Kaufman v. Nationwide Mut. Ins. Co.*, 1997 WL 703175, at *1 (E.D. Pa. Nov. 12, 1997) (denying plaintiff's motion to compel production of insurance company's personnel files of employees involved in handling of plaintiff's claim); *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 606 (Tenn. App. 2004) ("[D]iscovery of personnel records requires a compelling showing of relevance because of the privacy interests involved").

relevant information, but because they the documents *might* conceivably help them develop a yet-unspecified theory to explain why Plaintiffs' hail damage claims were denied.

As pleaded, however, this case involves roof inspections by third-parties hired by Auto-Owners to assess Plaintiffs' roof and report on compensable hail damage. It does not involve allegations of systemic or institutional bad faith on behalf of Auto-Owners (nor could it) and Plaintiffs have not produced *any* evidence of systemic or institutional bad faith. Instead, Plaintiffs have alleged (as the foundation of their bad faith claim) that the third-party inspectors hired by Auto-Owners were biased and failed to conduct adequate and correct investigations (which are attributable to Auto-Owners under the non-delegable duty doctrine).[7] There is absolutely no basis (other than Plaintiffs' hope) for thinking that Auto-Owners' internal employee personnel and compensation documents for employees not even involved in Plaintiffs' claims have anything whatsoever to do with the propriety of inspections conducted by the allegedly-biased third parties. Plaintiffs' hail damage claims were not claims in which Auto-Owners' claims department was tasked with making a multifaceted or complex determination about coverage. Either Plaintiffs' roof sustained hail damage in excess of the policy deductible or it didn't. As Plaintiffs tacitly admit by the absence of any pertinent allegations in the Amended Complaint, this is not the type of case where institutional or systemic practices and policies could or did have any nexus to the ultimate claim decisions that were made. *See DeKnikker v. Gen. Cas.*, No. CIV. 07-4117, 2008 WL 1848144, at *2 (D.S.D. Apr. 23, 2008) ("Before allowing discovery about broad corporate practices, plaintiff *must first show* the practice is connected to plaintiff's claim." (emphasis added)).

---

[7] Although Plaintiffs have produced no evidence to date to support this speculative bias allegation, Auto-Owners has agreed to produce a vast array of documents that conclusively demonstrate that Plaintiff's theories of third-party bias are unfounded and untrue. If, as Plaintiffs speculate, there was some systemic impropriety in the selection, compensation, or work of Dakota Claims or Hermanson Egge Engineering, it will necessarily appear in the documents Auto-Owners has already agreed to produce.

Plaintiffs' desire to satisfy their curiosity about personnel and compensation documents for employees who were not even involved in the claim administration is insufficient to justify release of these sensitive materials in this case.  Under these circumstances, the Magistrate Judge should have denied Plaintiffs' motion to compel.[8]

## II.  The Magistrate Failed To Consider And Apply Proportionality Principles Under Federal Rule of Civil Procedure 26(b)(2)(C).

Although discovery under the Federal Rules is broad, federal courts ***must*** limit discovery where "the discovery sought is unreasonably cumulative or duplicative" or where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, . . . the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  FED. R. CIV. P. 26(b)(2)(C)(i)&(iii); *see also* FED. R. CIV. P. 26(g)(1)(B)(iii) (discovery must be reasonable "considering . . . prior discovery in the case").  This rule of proportionality "is intended to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry."  *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989) (quoting FED. R. CIV. P. 26 advisory committee note) (internal quotations omitted); *see also White v. Deere & Co.*, No. 1:13CV02173PABNYW, 2015 WL 1385210, at *5 (D. Colo. Mar. 23, 2015) ("the proper scope of discovery is always bounded by the principles of proportionality"); *Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 422, 428 (N.D. Iowa 2014) (denying motion to compel as disproportionate to the needs of the case).

---

[8] Auto-Owners is, of course, well aware of other cases in this District in which production of senior-level personnel and compensation documents has been ordered.  Nonetheless, this is not a reason to depart from the well-established discovery principles discussed herein and order production of these records in every case involving allegations of bad faith.  Other cases exist, both in this District and in others, in which motions to compel production of similar documents have been denied in cases involving allegations of bad faith.  *See, e.g., DeKnikker*, 2008 WL 1848144, at *2 (personnel files for those who were not "directly involved in the decisions about [the] plaintiff's claim," including those of a supervisor, a claims specialist, and a regional vice president, were not discoverable); *see also* Docket No. 47 at 10-11 (citing cases).

Here, the Magistrate Judge acted contrary to law by failing to consider the proportionality concepts encompassed in Rule 26(b)(2)(C).  *See Vaughn v. Safeway, Inc.*, No. 14-CV-01066-REB-NYW, 2015 WL 1280489, at *1 (D. Colo. Mar. 18, 2015) (stating that "[i]t is **incumbent** upon the court" to consider proportionality principles (emphasis added)); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010) ("permissible discovery **must** be measured against the yardstick of proportionality" (emphasis added)).  Auto-Owners specifically argued in its opposition to the motion to compel that, given (a) the nature of the issue in this case (third parties who missed hail damage to shingles already severely damaged from other non-covered causes), (b) the vast array of other documents Auto-Owners had agreed to produce,[9] and (c) the size of the claim at issue, the speculative and intrusive discovery sought by Plaintiffs was improper.  The Magistrate Judge, however, did not address any of these arguments or even consider Rule 26(b)(2)(C).

Auto-Owners believes it is entitled to summary judgment as a matter of law on Plaintiffs' bad faith claim because Plaintiffs' hail claims were fairly debatable and Auto Owners denied the claims based on multiple investigative reports, all of which concluded that the shingles on Plaintiffs' roof were not damaged by hail.  (*See* Docket No. 21, 39.)  Auto-Owners also believes it is entitled to judgment on the pleadings on Plaintiffs' Unfair Trade Practices claim for several independent reasons.  (*See* Docket No. 22, 41.)  These motions are fully briefed and await ruling.  Under these circumstances, it is contrary to Rule 26(b)(2)(C)'s proportionality principles to require Auto-Owners to respond to speculative and intrusive discovery into the personnel and compensation documents of employees that had no involvement in Plaintiffs' claims.

---

[9] *See Vietnam Veterans of Am. v. C.I.A.*, No. 09-CV-0037 CW JSC, 2011 WL 4635139, at *3 (N.D. Cal. Oct. 5, 2011) ("Given that Plaintiffs have yet to review a significant amount of the discovery already produced in this action, the Court must view their additional requests for discovery with a critical eye.").

In light of the huge amount of discovery already produced (or that Auto-Owners has agreed to produce), the actual issues involved in the case (issues that, as alleged, do not involve systemic bad faith), the pending motion for summary judgment and motion for judgment on the pleadings, and the size of the insurance claims at issue (*i.e.*, $5,978), the Magistrate Judge acted contrary to law by granting Plaintiffs' motion to compel in its entirety.

## III.   The Magistrate Judge's Finding That Request 2 Narrowly Defined "Personnel File" Is Clearly Erroneous.

Request 2 broadly defined "personnel files" to include "***any and all*** documents related to the individual's employment relationship with, and job performance for, Defendant," and specifically included, but was "not limited to," documents related to the hiring process, job changes, performance evaluations, reviews, training, compensation, and bonus recommendations.  (*See* Docket No. 50 at 4.)  Neither request 2, nor the definition of "personnel files," excluded or permitted Auto-Owners to withhold any documents "related to" the employment relationship.  (*See id.*)  Auto-Owners consequently (and properly) objected on grounds that the request sought "many documents contained in personnel files or related to an individual's employment which have no arguable relevance to the action: health information, health insurance information, issues unrelated [to] the handling of claims, tax information and elections, and the like."  (Docket No. 50 at 5.)

The Magistrate Judge overruled Auto-Owners' objection on grounds that request 2 "defined 'personnel files' so as to omit any of the types of documents [Auto-Owners] g[a]ve as examples of irrelevant documents."  (*Id.* at 18.)  The conclusion is clearly erroneous and contrary to the unambiguous language in request 2.  Nothing in request 2 narrowly defined "personnel files" or permitted the exclusion of irrelevant documents, including but not limited to those

19

specified by Auto-Owners in its objection.  The Magistrate Judge erred in overruling Auto-Owners' overbreadth objection to request 2.

IV. __Auto-Owners Did Not Waive Its Overbreadth (Time) Objection To Request 2.__

Auto-Owners alternatively objected to request 2 on grounds that the request was overbroad as to the relevant time frame.  (*See* Docket No. 50 at 18; Docket No. 43 at 24 n.72.) Specifically, request 2 included no limitation as to the time frame of information to be included in the requested personnel files.  The Magistrate Judge specifically recognized Auto-Owners' objection, but concluded that it was waived because it was not sufficiently argued in Auto-Owners' opposition brief.  (Docket No. 50 at 18.)  The Magistrate Judge's finding it clearly erroneous and contrary to law.

Auto-Owners argued in detail that sensitive personnel files for employees not involved in Plaintiffs' claim were not relevant (for any time period) to the claims and defenses at issue in the case.  (*See* Docket No. 47 at 1, 8-11.)  The concept of overbreadth as to time was implicit in Auto-Owners' relevance arguments and was explicitly raised in Auto-Owners' objections.  To the extent the Court determined that the personnel files at issue were relevant as to some time period, it was improper for the Court to sidestep the overbreadth (time) objection based on waiver principles, especially when mandatory proportionality principles require the Court to limit the extent of discovery where it is unreasonably cumulative or duplicative or where the burden or expense of the proposed discovery outweighs it likely benefit.  *See supra* Part II.  The Magistrate Court erred in refusing to consider Auto-Owners' overbreadth (time) objection to request 2.

CONCLUSION

Production of sensitive personnel and compensation documents is "not a step which the Court should lightly undertake."   *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D. Minn. 1997).   For the foregoing reasons, Auto-Owners respectfully requests that the Court overturn the Magistrate Judge's Order granting Plaintiffs' motion to compel production of personnel file, compensation, and incentive information for employees who had no involvement in, and no knowledge of, Plaintiffs' insurance claims for hail damage to the shingles on their roof.

Dated this 3rd day of April, 2015.

_/S/ Gary D. Jensen_____
Gary D. Jensen
Brett A. Poppen
BEARDSLEY, JENSEN & VON WALD,
Prof. L.L.C.
4200 Beach Drive, Suite 3
P.O. Box 9579
Rapid City, SD 57709-9579
T: (605) 721-9579; F: (605) 721-2801
E-mail: gjensen@blackhillslaw.com

Floyd P. Bienstock
P. Bruce Converse
STEPTOE & JOHNSON LLP
201 E. Washington St., Suite 200
Phoenix, Arizona 85004
T: (602) 257-5274; F: (602) 257-5200
E-mail: fbienstock@steptoe.com
*Attorneys for Defendant Auto-Owners*
*Insurance Company*