UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CARL HILL and JANICE HILL,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>AUTO OWNERS INSURANCE COMPANY,<br><br>                    Defendant. | CIV. 14-5037-KES<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT, GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, DENYING MOTION TO BIFURCATE AND STAY DISCOVERY, AND OVERRULING OBJECTIONS ON MOTION TO COMPEL |

Plaintiffs, Carl and Janice Hill, brought this action against defendant, Auto Owners Insurance Co., for breach of contract, bad faith, and unfair trade practices stemming from Auto Owners' denial of plaintiffs' claim for benefits due to alleged hail damage to their roof. Auto Owners moves for summary judgment on plaintiffs' bad faith and punitive damages claims and moves for judgment on the pleadings on plaintiffs' unfair trade practices claim. Auto Owners has also requested an early trial on the contract claim and a stay on discovery. Plaintiffs moved to compel certain discovery, which motion was referred to the United State Magistrate Judge for resolution and subsequently granted. For the following reasons, the court denies the motion for summary judgment, grants the motion for judgment on the pleadings, denies as moot the motion to bifurcate and stay discovery, and overrules Auto Owners' objections to the magistrate judge's order on the motion to compel.

## BACKGROUND

The facts, viewed in the light most favorable to the nonmoving party, are as follows:

Plaintiffs live in Rapid City, South Dakota. In 1992, they bought their current house, and over the years have worked on repairing and improving their home. The roof was redone in 1998 as part of a remodeling project on the second story. Beginning in 2006, plaintiffs purchased an insurance policy for their home from Auto Owners, and have at all relevant times maintained that coverage. In May 2013, plaintiffs received a notice from Auto Owners that they would have to pay an extra premium to keep the replacement-cost coverage on their roof due to its age; they could also elect to forgo the extra premium and switch to actual-cash-value coverage.

On July 8, 2013, plaintiffs submitted a claim for hail damage resulting from a storm on June 24, 2011. Auto Owners previously had paid to replace the roof of a neighboring house due to damage from the same storm. Because Auto Owners does not have a claim office in Rapid City, it contacted Dakota Claims Service of Rapid City to investigate plaintiffs' claim.

Dakota Claims sent Steve Wolff to inspect plaintiffs' roof on July 10, 2013. Neither Carl nor Janice was present at the inspection. Wolff found evidence of hail damage to the front door trim and metal materials on the roof. Nonetheless, Wolff concluded that the shingles did not show any hail damage and the damage to the roof was due to weathering and maintenance issues. Wolff prepared a damage estimate, and because the damage to the metal

materials on the roof was less than plaintiffs' deductible, Wolff recommended closing the file without payment. Based on Wolff's findings, Dan Highstreet, a claims representative for Auto Owners, sent plaintiffs a letter denying their claim.

Plaintiffs requested a re-inspection. On July 19, 2013, Mike Kirkeby from Dakota Claims inspected plaintiffs' roof. Plaintiffs were not present and indicate that Dakota Claims never called to set up this second inspection. Docket 23-6 at 3. Kirkeby noted that plaintiffs claimed their neighbors all had new roofs and observed that about half of the homes in the area had new roofs. Kirkeby reiterated that the roof had exposure damage. He also stated: "It is my opinion that there is no evidence of hail damage to the shingles as we have not had damaging hail in this part of Rapid City for over 14 years." Docket 29-8 at 3. Kirkeby concluded his report by warning that "I do believe the agent and insured will press the matter until a roof is purchased." *Id.*

On July 20, 2013,[1] plaintiffs' house was hit by another hail storm. Plaintiffs were home during this storm and recorded a video showing the hail. Following this storm, plaintiffs submitted another claim for hail damage to their roof on the advice of their insurance agent. Auto Owners again retained

---

[1] In their complaint to the South Dakota Division of Insurance, plaintiffs indicate the storm was on July 18, 2013, the day *before* Kirkeby's supplemental inspection. Docket 23-6 at 3. Plaintiffs' brief and other materials give the date of the storm as July 20, 2013. *See, e.g.*, Docket 28 at 10, n.12, & n.13. Because plaintiffs use the July 20, 2013, date with only one exception, the court accepts plaintiffs' consistent representation that the storm occurred on July 20, 2013, one day *after* Kirkeby's supplemental inspection but two days *before* Kirkeby dated the report. See Docket 29-8 at 3 (listing the inspection date as July 19 and the signature date as July 22).

Dakota Claims, and adjuster Moya Bieber inspected plaintiffs' roof on August 12, 2013. Carl was present for this inspection, and he claimed that Bieber never went on the roof but instead waited in the street while an unknown person inspected the roof. *See* Docket 23-6 at 3. Bieber's report noted damage related to weathering and exposure. She also reported hail damage to the front door trim and the metal materials on the roof, consistent with the previous findings of Wolff and Kirkeby. Because there was no new damage, Bieber recommended closing the claim without payment. Based on Bieber's report, Highstreet again sent plaintiffs a letter denying their claim and informing them that damage from weather, deterioration, or faulty maintenance was not covered under the policy.

Auto Owners also retained Hermanson Egge Engineering, Inc., to inspect plaintiffs' roof for hail damage. Larry Hermanson performed an inspection on September 6, 2013. Hermanson concluded that half to three quarters of the shingles on plaintiffs' roof were in poor condition due to a poorly vented attic space, which had caused blistering, holes, and grain loss. Unlike Wolff, Kirkeby, or Bieber, Hermanson did not mention weathering as a cause for the deterioration of the shingles, and he stated that some of the shingles on the west surface were in good condition. Hermanson observed hail damage to the metal surfaces on the roof but concluded that the shingles had not suffered any hail damage.

Plaintiffs also obtained inspections independent of their insurance company. Sometime between July 19 and July 31, 2013, Kevin Kisner of

Exceptional Exteriors inspected plaintiffs' roof, saw hail damage, and advised plaintiffs to file an insurance claim. On August 28, 2013, Jack Brockman of Allied Construction inspected the roof and observed random indentations and areas missing granules indicative of hail damage. On September 29 and 30, 2014, counsel for plaintiffs retained Paul Brenkman to perform an inspection on the roof. Brenkman observed hail damage to roof-top shingles, vents, flue caps, gutters, and wood exterior siding and moldings. Brenkman termed the hail damage "definitive" and opined that it was unreasonable for Auto Owners to ignore the signs of hail damage on plaintiffs' roof. Docket 29-3 at 4, 6.

Plaintiffs filed this suit claiming damages for breach of contract,[2] bad faith, and unfair trade practices. Docket 19 at 6 (amended complaint filed August 15, 2014). Plaintiffs also claim they are entitled to punitive damages and attorney's fees. *Id.* On September 18, 2014, Auto Owners moved for summary judgment on the bad faith and punitive damages claims. Docket 21. Separately, Auto Owners moved for judgment on the pleadings on the unfair trade practices claim. Docket 24. Finally, Auto Owners moved for a separate early trial on the contract claim and to stay discovery on the remaining claims until after the contract issue was resolved. Docket 26.

While these motions were pending, Auto Owners retained Haag Engineering to inspect plaintiffs' roof. Richard Herzog performed the inspection on October 23, 2014, to "determine the extent of hail-related damage from

---

[2] At this time, there is no motion pending with respect to the breach of contract claim.

specific storms on June 24, 2011, and July 20, 2013." Docket 40-1 at 2. Over a year after the second storm, Herzog found "[h]ail-impact spatter marks ranging from 1/8- to 1/2-inch across . . . on various surfaces, particularly on horizontal surfaces or vertical surfaces facing south." *Id.* at 4. The south elevation of the garage and the south side of a flue pipe showed marks up to 3/8-inch across. *Id.* Significantly, Herzog stated, "[o]ther indications of hail impact were visible to vertical surfaces on all four elevations of the dwelling." *Id.* Consistent with the other inspections, Herzog noted hail damage to metal parts of the roof and damage to a large number of shingles from weathering and age.[3] *Id.* at 5. Herzog estimated that hail had damaged over 100 shingles on the house and 20 shingles on the garage. *Id.* at 6. Based on the number of hail-damaged shingles, Herzog concluded that "the cost of individual repair of damaged shingles likely would approach or exceed the reasonable cost for full shingle replacement." *Id.* at 7. Following Herzog's inspection, Auto Owners agreed to pay for replacement of all the shingles pursuant to the policy, without condition or release. Docket 42 at 1-2.

Subsequently, plaintiffs filed a motion to compel certain discovery, Docket 43, which this court referred to United States Magistrate Judge Veronica Duffy. The magistrate judge issued an order granting the motion to

---

[3] Herzog recognized that the extensive deterioration of the shingles made assessment of hail damage more difficult. Docket 40-1 at 7. Herzog also observed that the photos taken by Dakota Claims inspectors "were primarily related to deterioration, mechanically-caused damage, and shingle quality variations[,]" and that the photos described by Brenkman as examples of "definitive hail damage" also showed substantial damage not caused by hail. *Id.*

compel. Docket 50. Auto Owners filed an objection requesting that this court set aside the order granting the motion to compel. Docket 53.

## DISCUSSION

### I.    Motion for Summary Judgment

#### A.    Legal Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which she bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

### B.   Bad Faith Claim

Auto Owners argues summary judgment[4] is appropriate on plaintiffs' bad faith claims because its decision to deny plaintiffs' claim was made in good faith. Plaintiffs, on the other hand, argue that there are questions of material fact as to whether Auto Owners acted in bad faith when it denied their claim.

The South Dakota Supreme Court[5] laid out the test for whether summary judgment is appropriate in a first-party bad faith claim in *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 771 N.W.2d 623 (S.D. 2009).

> [T]here must be an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

> Under these tests of the tort of bad faith, an insurance company, however, may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis.

---

[4] Plaintiffs take issue with the prediscovery timing of Auto Owners' summary judgment motion. Rule 56 permits a party to bring a summary judgment motion "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Plaintiffs request that, if the court finds they have not introduced sufficient evidence to survive summary judgment, they be allowed to conduct at least some discovery to obtain evidence to support their claims. Docket 28 at 40-41. Because the court is denying the motion for summary judgment, plaintiffs' request is moot.

[5] Because federal jurisdiction in this action is based on diversity, the court applies South Dakota substantive law. *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 n.6 (8th Cir. 2007) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties agree that South Dakota law applies to this action.

*Id.* at 629 (quoting *Walz v. Fireman's Fund Ins. Co.*, 556 N.W.2d 68, 70 (S.D. 1996)). First-party bad faith is an intentional tort and occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits. *Hein v. Acuity*, 731 N.W.2d 231, 235 (S.D. 2007). But if an insured's claim is fairly debatable either in fact or law, an insurer cannot be said to have denied the claim in bad faith. *Dakota, Minn. & E. R.R. Corp.*, 771 N.W.2d at 630. "The questions of whether the insurer's actions were unreasonable or whether the claim was fairly debatable must be viewed at the time the insurer made the decision to deny or litigate the claim, rather than pay it." *Id.* "The question of whether an insurer has acted in bad faith is generally a question of fact." *Bertelsen v. Allstate Ins. Co.*, 833 N.W.2d 545, 554 (S.D. 2013).

Auto Owners argues it had an objectively reasonable basis for its claim decisions because four inspections found no hail damage to plaintiffs' roof. Docket 21 at 5-9. For support, Auto Owners points to *Stene v. State Farm Mutual Automobile Insurance Co.*, 583 N.W.2d 399 (S.D. 1998).[6] In *Stene*, the South Dakota Supreme Court held that an insurer was entitled to summary judgment on a bad faith claim because ample evidence supported the insurer's valuation of the claim and the plaintiff "was simply erroneously convinced that

---

[6] Auto Owners also cites to decisions from Alabama, Arizona, Colorado, Iowa, Minnesota, Nebraska, New Jersey, Ohio, Rhode Island, and Wisconsin. Docket 21 at 5-7. The decisions cited are not binding on this court. Furthermore, they all hinge on the existence of a reasonably debatable basis for denying the claim, which requirement is already articulated in South Dakota law. *See, e.g.*, *Dakota, Minn. & E. R.R. Corp.*, 771 N.W.2d at 630.

he was entitled to" full payment. *Id.* at 403. *Stene* makes clear that if an insurance company has a reasonable basis for denying a claim it cannot be held liable for acting in bad faith. But *Stene* does not stand for the proposition that an insurer automatically has a reasonable basis for denying a claim simply because it hires someone to produce an estimate or a report.

It would be possible for a jury to find that it was unreasonable for Auto Owners to rely on the reports provided by Wolff, Kirkeby, Bieber, and Hermanson, and that Auto Owners knew its reliance on those reports was unreasonable. For example, Kirkeby stated in his report that there had been no damaging hail in Rapid City in fourteen years, despite the fact that he—and every other person who inspected plaintiffs' roof—observed hail damage to the metal materials on plaintiffs' roof. Furthermore, Auto Owners paid to replace a neighbor's roof due to hail damage from the same 2011 storm. Based on the reports noting hail damage to the metal materials on plaintiffs' roof and the fact that Auto Owners paid a neighbor's hail damage claim, a jury could find that Auto Owners should have known that Kirkeby's statement was false.

Also, all the inspectors agreed that the shingles on plaintiffs' roof showed damage from weathering and exposure. Such damage would make the shingles more vulnerable to hail damage. Yet the photos taken by the adjusters hired by Auto Owners only showed long-distance photos claiming to depict no hail damage and only contained close-up photos of damage from weathering or deterioration. The absence of detailed photographic evidence showing no hail damage could be interpreted as evidence either that the investigation was

unreasonably incomplete or that the adjusters hired by Auto Owners selectively photographed only parts of the roof to minimize the evidence of hail damage and emphasize other damage. Based on those facts, a jury could conclude that Auto Owners should have known that it was unreasonable to rely on the reports finding no damage.[7]

Both sides took photos of the roof, and both sides have experts interpreting those photos. Auto Owners claims the photos show only weathering and deterioration, but plaintiffs and their expert claim that the photos show evidence of definitive hail damage. If the photos actually do show hail damage—a genuine question of material fact—the reasonability of Auto Owners' investigation would be further called into question. If Auto Owners had photos showing definitive hail damage, it would be unreasonable to rely on reports concluding the opposite. *See Kirchoff v. Am. Cas. Co. of Reading, Pa.*, 997 F.2d 401, 405 (8th Cir. 1993) (internal quotations omitted) (interpreting South Dakota law and stating "the requisite knowledge (or reckless disregard) on the part of the insurer may be inferred when the insurer has exhibited a reckless indifference to facts or to proofs submitted by the insured").

---

[7] The fact that the South Dakota Division of Insurance (SDDOI) took no action because it thought both sides had support does not compel the court to grant summary judgment on plaintiffs' bad faith claim. The SDDOI stated it was not authorized to engage in any fact finding. Docket 23-7. Also, SDDOI does not appear to have considered whether Auto Owners' reliance on the reports was reasonable or whether its claims handling process was fair. The letter expressly left open the possibility that plaintiffs could resolve their claims in court. *Id.* Thus, the fact that the SDDOI did not take any action would not preclude a jury in this instance from finding that Auto Owners did not have a reasonable basis for its denial of plaintiffs' claim.

Plaintiffs have also introduced other evidence that a jury could conclude implies an incomplete or unreasonable investigation. Auto Owners had four inspections that revealed no hail damage to the roof, but after litigation commenced Auto Owners hired Haag Engineering, "the pre-eminent forensic engineering firm in the country, [which] has established a broadly-accepted roof inspection and certification program, teaching inspectors among other things how to recognize hail damage to asphalt shingles." Docket 39 at 1. The final inspection found sufficient hail damage to warrant replacing the entire roof. The dramatic difference between the first four conclusions and the final inspection by Haag Engineering could support an inference that the first four inspectors were not properly trained or qualified,[8] or otherwise failed to adhere to the "broadly-accepted" techniques applied by Haag Engineering. The quality of Auto Owners' investigation is complicated by the fact that Bieber never actually went on the roof herself but instead waited at ground level for someone else to inspect the damage and report to her. The qualifications and expertise— if any—of the person who *actually* inspected plaintiffs' roof remain unknown. A jury could conclude that such practices amount to a failure to reasonably investigate plaintiffs' claim.

---

[8] The court does not find or imply that Dakota Claims, Hermanson Egge, or the individual employees of those firms, actually lack qualifications or training. At this stage of the litigation, the court views all evidence in the light most favorable to plaintiffs. There is a genuine dispute over the extent of the hail damage to plaintiffs' roof that would have been observable. Thus, the court assumes that there was hail damage to plaintiffs' roof that the first four inspections missed or intentionally omitted. Whether observable hail damage actually existed, and whether the first four inspections were insufficient because they failed to notice obvious hail damage, is a question for the jury.

Plaintiffs and Auto Owners both have experts in this matter. Weighing the credibility of those experts is a jury function. If this case, like *Stene*, is an instance where people reasonably disagree on the valuation of a claim or the presence of certain damage, then Auto Owners should not be liable for bad faith. But that conclusion is not compelled simply because Wolff, Kirkeby, Bieber, and Hermanson were hired by Auto Owners to write reports that found no hail damage. If the jury determined that Auto Owners knew the reports were unsupported or that Auto Owners knew the investigation performed was not reasonable, Auto Owners would not have fulfilled its obligation to its insureds when it denied plaintiffs' claim, despite the presence of the inspection reports.[9] *See Dakota, Minn. & E. R.R. Corp.*, 771 N.W.2d at 629-31 (discussing the requirement that an insurer conduct a reasonable investigation and subject its claims adjustment process to reasonable evaluation and review).

Moreover, plaintiffs' bad faith claim is broader than simply challenging whether Auto Owners had evidence to support its denial. Bad faith is not limited to claim denials only. *Dakota, Minn. & E. R.R. Corp.*, 771 N.W.2d at 629 (internal citations and quotations omitted) ("In the first-party context, there exists a contractual relationship, whereby the insurer has accepted a premium from its insured to provide coverage. Because of the nature of this relationship, . . . bad faith can extend to situations beyond mere denial of policy benefits.").

---

[9] The fact that Auto Owners obtained multiple expert opinions does not insulate them from a bad faith claim. If all four reports consistently ignored obvious hail damage, the fact that all four reports contained the same error could actually be evidence of a policy or expectation that adjusters minimize damage to avoid paying claims.

The core of plaintiffs' bad faith claim is that Auto Owners designed its claims handling process to produce evidence that Auto Owners could use to unfairly deny valid claims, thereby forcing its insureds to take extra steps to obtain payment while hoping that enough people would be discouraged from pursuing benefits to enable Auto Owners to realize a profit at the expense of its insureds.

The South Dakota Supreme Court has recognized that insurance companies have a responsibility to give equal consideration to the interests of insureds and may not force insureds to resort to litigation to vindicate contractual rights:

> "Equal consideration" was not given to the interests of these insureds. Due to LeMars' conduct, Olsons were forced to endure the rigors and uncertainties of trial, and Helmbolt faced potential personal responsibility for an excess judgment—which in fact occurred. It seems clear LeMars ignored its duty of good faith for the purpose of protecting its own interest. It also seems readily apparent to this court that the conduct of LeMars prior to the suit against Helmbolt was nothing more than gamesmanship. To allow a company to take the posture LeMars assumed would, at best, violate the public policy of this state, not to mention the settled law which requires an insurance company to settle and negotiate in good faith. Furthermore, LeMars' conduct in this case was tantamount to a unilateral revocation or termination of mandatory coverage. On its face, that is conduct in bad faith.

*Helmbolt v. LeMars Mut. Ins. Co.,* 404 N.W.2d 55, 58 (S.D. 1987). An insurer must not ignore the interests of its insured because "[t]he relationship of the insurer to the insured is akin to that of a fiduciary since it must give at least as much consideration to the insured's interests as it does to its own." *Trouten v. Heritage Mut. Ins. Co.*, 632 N.W.2d 856, 864 (S.D. 2001).

*Helmbolt* dealt with underinsured motorist coverage, which implicates different public policy concerns than hail damage coverage, and a refusal to

settle for policy limits, which is not at issue here. Nonetheless, both *Helmbolt* and *Trouten* make clear that the insurance company must give equal consideration to the interests of its insured, even when those interests are adverse to its own. Also, an insurance company may not "game" or manipulate its investigation or claims handling process to obtain a more favorable result at the expense of its insured by virtue of the insurance company's superior bargaining power and resources. If discovery revealed that Auto Owners hired adjusters with the understanding that the adjusters were expected to minimize or ignore evidence supporting a claim, or if Auto Owners instructed its adjusters to build a case against the insured rather than reasonably and fairly investigate the claim, or if Auto Owners intentionally adopted a policy of denying valid claims to discourage its insureds from further pursuing benefits, Auto Owners could be liable for the tort of bad faith for actions apart from its denial of benefits. Auto Owners has failed to address this aspect of plaintiffs' bad faith claim.

Genuine questions of material fact as to plaintiffs' claim that Auto Owners acted in bad faith when it denied their claim for hail damage remain, such as whether there actually was hail damage, how obvious that hail damage should have been, and whether Auto Owners knew or should have known that the investigation into the damage was unreasonable. Questions of fact also remain on whether Auto Owners acted in bad faith when it allegedly designed its claims handling process to allow its adjusters to build a case for denying

valid claims. Ultimately, these questions are for a jury to determine, *see Bertelsen*, 833 N.W.2d at 554, and summary judgment is inappropriate.

### C.     Punitive Damages

Under South Dakota law, punitive damages may not be recovered unless expressly authorized by statute. SDCL 21-1-4. Relevant South Dakota law states that:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, . . . the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

SDCL 21-3-2. To survive a summary judgment motion, a plaintiff must prove to the court by clear and convincing evidence that a reasonable basis exists upon which a jury could award punitive damages. *Dahl v. Sittner*, 474 N.W.2d 897, 902 (S.D. 1991); *see also Selle v. Tozser*, 786 N.W.2d 748, 757 (S.D. 2010) (reiterating that the clear and convincing evidence of a reasonable basis standard is a preliminary threshold lower than the standard required at trial).

"Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person. . . . Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts." *Dahl*, 474 N.W.2d at 900 (internal citations omitted). A showing of either type of malice is sufficient to support punitive damages. *Bertelsen*, 833 N.W.2d at 555.

" 'A claim for presumed malice can be shown by demonstrating a disregard for the rights of others.' " *Selle*, 786 N.W.2d at 757-58 (citing *Isaac v.*

*State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 761 (S.D. 1994)). Presumed malice may be inferred when a party acts willfully or wantonly and injures another. *Bertelsen*, 833 N.W.2d at 555 (quoting *Selle*, 786 N.W.2d at 757). With respect to willful and wanton misconduct, the South Dakota Supreme Court has stated that:

> There must be facts that would show that defendant intentionally did something . . . which he should not have done or intentionally failed to do something which he should have done under the circumstances that it can be said that he consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to the plaintiff.

*Berry v. Risdall*, 576 N.W.2d 1, 9 (S.D. 1998) (quoting *Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D. 1984)). Whether a defendant's conduct is willful and wanton is determined by an objective standard, rather than the defendant's subjective state of mind. *Id.*

Auto Owners makes only one argument—that because it had a reasonable basis for denying plaintiffs' claim, plaintiffs cannot show oppression, fraud, or malice. As discussed above, a jury could find that Auto Owners did not act reasonably in denying plaintiffs' claim. "An insurer's clear breach of contract or denial of a claim that is not fairly debatable may indicate malice." *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 699 (S.D. 2011). Plaintiffs have met their burden to show that a reasonable basis exists upon which a jury could award punitive damages. Auto Owners is not entitled to summary judgment on plaintiffs' punitive damages claim.

## II.   Motion for Judgment on the Pleadings

### A.   Legal Standard

When reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the court applies the same standard as on a motion to dismiss under Rule 12(b)(6). *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (noting that courts review a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion). "Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law." *Mills v. City of Grand Forks*, 614 F.3d 495, 497–98 (8th Cir. 2010) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). "The facts pleaded by the non-moving party must be accepted as true and all reasonable inferences from the pleadings should be taken in favor of the non-moving party." *Id.* The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record. *Id.* (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). In ruling on this motion, the court is not considering materials, submitted in conjunction with the summary judgment motion, that are not appropriate for consideration under Rule 12(c). *See* 5C Charles Alan Wright, et al., *Federal Practice & Procedure Civil* § 1371 (3d ed.) [hereinafter Wright and Miller] (when confronted with materials outside the pleadings, a court may convert the Rule 12(c) motion to a summary judgment motion or "refuse to accept materials outside the pleadings in order to keep the motion under Rule 12(c)").

- 18 -

### B.     Unfair Trade Practices Claim

Count three of the amended complaint alleges that Auto Owners

"misrepresented the benefits available under a policy of insurance, in violation

of SDCL 58-33-5." Docket 19 at 6. South Dakota law provides:

> No person shall make, issue, circulate, or cause to be made,
> issued, or circulated, any estimate, circular, or statement
> misrepresenting the terms of any policy issued or to be issued or
> the benefits or advantages promised thereby or the dividends or
> share of the surplus to be received thereon, or make any false or
> misleading statement as to the dividends or share of surplus
> previously paid on similar policies, or make any misleading
> representation or any misrepresentation as to the financial
> condition of any insurer, or as to the legal reserve system upon
> which any life insurer operates, or use any name or title of any
> policy or class of policies misrepresenting the true nature thereof.
> Violation of this section is a Class 2 misdemeanor.

SDCL 58-33-5. Chapter 58-33 provides a private right of action and recovery of

attorney's fees for claims based on unfair trade practices.[10] SDCL 58-33-46.1.

Auto Owners contends that a claim under SDCL 58-33-5 is subject to

Rule 9(b)'s heightened pleading requirements.[11] Docket 25 at 2-4. Both the

Federal Rules of Civil Procedure and South Dakota law require that complaints

---

[10] Because this court has subject matter jurisdiction based on diversity
of citizenship, South Dakota state law supplies the elements that must be
included in the complaint. 5A Wright and Miller § 1297.

[11] Plaintiffs argue that failure to state a claim upon which relief can be
granted must be raised before a responsive pleading. Docket 28 at 42. Rule
12(b) lays out a number of defenses, including failure to state a claim upon
which relief can be granted. Fed. R. Civ. P. 12(b)(6). But Rule 12 also allows a
defense of failure to state a claim upon which relief can be granted to be raised
by a motion under Rule 12(c). Fed. R. Civ. P. 12(h)(2)(B). A motion under Rule
12(c) may be made after the pleadings are closed but early enough not to delay
trial. Thus, the Rule 12(c) motion is timely.

alleging fraud or misrepresentation be pleaded with particularity.[12] Fed. R. Civ. P. 9(b); SDCL 15-6-9(b); *N. Am. Truck & Trailer, Inc. v. M.C.I. Comm'n Servs., Inc.*, 751 N.W.2d 710, 713 & n.2 (S.D. 2008) (noting that the requirements of SDCL 15-6-9(b) are identical to those under Federal Rule of Civil Procedure 9(b) and citing federal law for interpreting the scope of the rule). "Even when a plaintiff is not making a fraud claim, courts will require particularity in the pleading if the cause of action is premised on fraudulent conduct." 5A Wright and Miller § 1297. Plaintiffs do not dispute that their unfair trade practices claim is subject to Rule 9(b)'s heightened pleading standard. Instead, they contend the complaint does plead a violation of SDCL 58-33-5 with sufficient particularity. Docket 28 at 42-43. Thus, the court assumes without deciding that plaintiffs' claim for a misrepresentation of benefits under SDCL 58-33-5 must be pleaded with particularity.

To satisfy the heightened pleading requirements, the complaint must specify the time, place, and contents of the false representations, the identity of the person making the misrepresentation, and what was obtained or given up. *See Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013). The amended complaint does not set forth any specific misrepresentation. The only allegation that could be interpreted as a misrepresentation alleges "[b]ased on the reports from Dakota Claims, Auto Owners denied that any damage to

---

[12] If the requirements were not identical, the Federal Rules of Civil Procedure would apply. 5A Wright and Miller § 1297 (3d ed.) ("Since Rule 9(b) is a special pleading requirement, it concerns procedure in the federal courts and should govern in all civil actions, including all suits in which subject matter jurisdiction is based on diversity of citizenship[.]").

the shingles had occurred, and refused to pay anything at all for damage to the shingles." Docket 19 at 3. That sentence contains no information on who made the alleged misrepresentation, what specifically was contained in the statement, when it was made, or what was obtained or given up based on the misrepresentation.

Plaintiffs argue that the allegation contained in the amended complaint is sufficient to allow Auto Owners to respond to and prepare a defense to the complaint. Docket 28 at 42-43 & n.104 (citing *Comm. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 646 (8th Cir. 1995)). "The level of particularity required depends on . . . the nature of the case and the relationship between the parties." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citing *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957)). "Rule 9(b) should be read 'in harmony with the principles of notice pleading.' " *Id.* (quoting *Schaller Telephone Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). Nonetheless, conclusory allegations are not sufficient to satisfy the requirements of Rule 9(b). *Id.*

In *Freitas*, the Eighth Circuit refused to relax the heightened pleading standards under Rule 9(b) in a case involving a fraudulent misrepresentation claim. Although *Freitas* acknowledged that in some circumstances courts had allowed plaintiffs to plead fraud allegations with less specificity, the Eighth Circuit noted that those cases were situations in which the essential information was possessed by the defendant and not accessible to the plaintiff without the benefit of discovery. *Freitas*, 703 F.3d 439-40. This is not a case in

which plaintiffs do not have access to the facts necessary to meet the heightened pleading standard. Furthermore, unlike the complaint in this case, the complaint in *Commercial Property Investments* included thirteen specific statements as the basis for the common-law fraud claim. *See Comm. Prop. Invs.*, 61 F.3d at 645-46.

By not identifying a particular misrepresentation in the complaint, plaintiffs put Auto Owners in a position from which it was unable to respond quickly and accurately to the allegation against it. From the briefs on the motion for judgment on the pleadings, it appears Auto Owners was not able to identify precisely what misrepresentation plaintiffs alleged, which in turn forced Auto Owners to wait until its reply brief to argue that the particular misrepresentation at issue was not actionable under SDCL 58-33-5.[13] *See* Docket 41 at 2. Also, plaintiffs still have not identified " 'what was obtained or given up [by the misrepresentation].' " *Freitas*, 703 F.3d at 439 (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)). The amended complaint therefore does not plead the unfair trade practices claim with the particularity required by Rule 9(b).

Auto Owners contends that the court should not allow plaintiffs to amend the complaint because amendment would be futile. But plaintiffs have

---

[13] Although plaintiffs identified the substance of the alleged misrepresentation in their response brief, they still have not identified which statement or statements in particular form the basis of their unfair trade practices claim.

not moved to amend the amended complaint[14] and at this point plaintiffs are not able to amend their pleading as a matter of course. *See* Fed. R. Civ. P. 15(a)(1).

## III.   Discovery

### A.   Motion to Stay Discovery

Auto Owners moved for a separate, early trial on plaintiffs' contract claim and to stay discovery related to the other claims until resolution of the contract claim and these dispositive motions. Docket 26. Because Auto Owners decided to pay to replace plaintiffs' roof while these motions were pending, it now acknowledges that "a separate trial on the contract claim in this case would not provide any benefit in the present circumstances, and Auto-Owners withdraws its motion to the extent it requests that relief." Docket 42 at 2. Auto Owners also clarified that it "still requests a stay of discovery until the resolution of its two other pending dispositive motions." *Id.* Because the court has now resolved those dispositive motions, Auto Owners' motion to stay discovery is denied as moot. To the extent any discovery remains, it should be completed in accordance with the court's current scheduling order.

### B.   Motion to Compel

Auto Owners objected to the magistrate judge's disposition of plaintiffs' motion to compel. This court's review of a magistrate judge's order is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. A

---

[14] The court does not construe the single sentence in plaintiffs' response brief, Docket 28 at 43, to be a motion to amend because it does not comply with the procedures set out in the local rules for the District of South Dakota.

district court may set aside the magistrate judge's order on any pretrial matter if it is shown to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007). This standard affords deference to the magistrate judge, and the order will not be set aside unless the court is "left with the definite and firm conviction that a mistake has been committed." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999) (citing *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996)).

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26, which provides:

> Unless otherwise limited by a court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). The court will limit the extent of discovery if it determines the discovery is unreasonably duplicative, cumulative, can be obtained from a more convenient source, or if the expense or burden of discovery outweighs its benefit. Fed. R. Civ. P. 26(b)(2)(C).

The scope of discovery under Rule 26(b) is extremely broad. *See* 8 Wright & Miller § 2007. The reason for the broad scope of discovery is that "[m]utual

knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Id.* (quoting *Hickman v. Taylor,* 329 U.S. 495, 507-08 (1947)).

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y,* Civ. No. 03-165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *Id.* (citing *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1992)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* (citing *Cervantes v. Time, Inc.,* 464 F.2d 986, 994 (8th Cir. 1972)).

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. *Penford Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 265 F.R.D. 430, 433 (N.D. Iowa 2009); *St. Paul Reinsurance Co.*

*v. Commercial Fin. Corp.,* 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden—that party must make a specific showing of reasons why the relevant discovery should not be had. *Cincinnati Ins. Co. v. Fine Home Managers, Inc.,* Civ. No. 09-234, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010); *see also Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 589, 593 (W.D.N.Y. 1996). Also, the fact that producing discovery is burdensome is not sufficient to preclude discovery of that information because all discovery entails some inherent cost and burden to the producing party. *See Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden."); *Rogers v. Tri-State Materials Corp.,* 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

### 1.     Request for Production Number 2

In Request for Production (RFP) 2, plaintiffs requested certain personnel files, meaning "any and all documents related to the individual's employment relationship with, and job performance for, [Auto Owners]." Docket 43-3 at 7. RFP 2 included "all personnel involved with Plaintiffs' claim for hail damage to

the roof of their home, and all supervisors in the chain of command above those personnel, up to the head of the claims department." *Id.* Plaintiffs included a general provision allowing Auto Owners to redact or withhold social security numbers, health and life insurance, condition, or treatment information, and bank, credit card, or other financial account numbers for former and current employees. *Id.* at 3.

In response to the motion to compel, Auto Owners argued that there was no basis except speculation to warrant production of employment and compensation documents for employees uninvolved in handling plaintiffs' claim. Docket 47 at 8. Auto Owners also argues that it has turned over other documents that would "necessarily" include the information plaintiffs seek if that information exists. *Id.* at 9. Auto Owners concludes that the privacy interests of its employees outweighs plaintiffs' need for the documents requested.

The magistrate judge found that plaintiffs met their burden to initially show the evidence sought in RFP 2 was relevant and was not overbroad. Docket 50 at 15-17. Next, the magistrate judge concluded that the ability to redact sensitive information was sufficient to narrow the scope of documents produced to only relevant documents. *Id.* at 18. Finally, the magistrate judge deemed Auto Owners' time frame objection to be waived because it was not argued in Auto Owners' response brief. *Id.*

Auto Owners now argues that the magistrate judge's conclusion regarding possible relevance of personnel files is contrary to law. Docket 53 at

11-17. In support of this argument, Auto Owners cites numerous cases prohibiting unsupported or speculative discovery. *Id.* Although speculation is insufficient to compel discovery, a party need not conclusively demonstrate that information sought in discovery is relevant or admissible. Instead, a party must make a threshold showing that requested discovery might contain, or might lead to, relevant evidence. *See Hofer,* 981 F.2d at 380 (discussing discovery standards). "[C]ourts in the District of South Dakota have routinely found personnel files in insurance bad faith cases to be relevant and discoverable." *Lillibridge v. Nautilus*, No. CIV. 10-4105-KES, 2013 WL 1896825, at *9 (D.S.D. May 3, 2013). Personnel files can contain information on applications and resumes demonstrating company hiring preferences, performance reviews, instructions, incentives, and strategies.[15] That information may be contained in the personnel files of managers or other employees who did not directly handle the claim at issue. Plaintiffs need not guarantee, as Auto Owners suggests, that the discovery sought will contain relevant information. The magistrate judge's opinion properly identified and

---

[15] In addition to its relevance to a bad faith claim, this information could also be relevant to the question of punitive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) ("We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident."); *Roth v. Farner-Bocken Co.*, 667 N.W.2d 651, 666-67 (S.D. 2003) (discussing the same factors and whether certain conduct "reflected a company policy or practice").

applied the standard for discovery to the facts and claims in this case. *See*
Docket 50 at 9-13 (discovery standards); Docket 50 at 15-17 (discussing
relevance of personnel files to this action).

Part of Auto Owners' dispute with the magistrate judge's decision is
attributable to Auto Owners' refusal to recognize that plaintiffs' bad faith claim
accuses Auto Owners of implementing a systemic and institutionalized policy of
minimizing claims. *See* Docket 19 at 3-4 (alleging that Auto Owners took
certain actions to predictably weigh the claims handling process in its favor).
As the magistrate judge found, discovery into the claims handling process and
employee incentives is relevant to those factual disputes. Additionally, the fact
that Auto Owners has provided some discovery regarding Dakota Claims and
Hermanson Egge does not relieve it of its burden to provide all responsive
documents. Also, the magistrate judge correctly declined to use discovery
practice as a tool for effectively deciding the pending dispositive motions.

Auto Owners also contends that the magistrate judge acted contrary to
law by failing to consider proportionality principles under Rule 26(b)(2)(C).
Docket 53 at 17-19. But Auto Owners' argument here is a restatement of its
beliefs that the discovery requested is speculative and that it is entitled to
judgment in its favor based on its pending dispositive motions. As discussed
with respect to Auto Owners' first objection, plaintiffs have met their threshold
burden to show with a reasonable degree of specificity the information sought
and why the discovery requested may contain that information. Auto Owners
argues that sensitive information weighs against discovery, but the court has

entered a protective order in this case to alleviate privacy concerns. *See* Docket 52 (protective order).

Auto Owners presents no other specific concerns that would alter the presumptive broad discovery allowed under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(2)(C) (enumerating proportionality factors). This discovery request places a burden on Auto Owners, but that burden is not unreasonable. Even if this discovery ultimately does not contain information supporting plaintiffs' positions, as Auto Owners claims, the discovery request is not unreasonably cumulative or duplicative or available in a more convenient source. Plaintiffs are not required to accept Auto Owners' representation that no useful information is contained in the documents requested. The value of the roof replacement cost is small, but plaintiffs' bad faith and punitive damages claims are important issues and place a much larger amount in controversy. Auto Owners makes no showing that its resources are limited. Overall, RFP 2 appears to be a proper use of a discovery mechanism. *See* 8 Wright and Miller § 2008.1 ("In general, it seems that the proportionality provisions should not be treated as separate and discrete grounds to limit discovery so much as indicia of proper use of discovery mechanisms[.]").

Auto Owners objects to the magistrate judge's finding that RFP 2 did not include irrelevant documents. See Docket 50 at 18 (ruling); Docket 53 at 19 (objection). Auto Owners is correct that RFP 2 itself does not supply the limiting language on which the magistrate judge relied. Instead, the general

provisions relating to the requests for production contain the following statement:

> Redactions. For your current and former employees, you may redact or withhold (i) social security numbers, (ii) health and life insurance, condition, or treatment information, and (iii) bank, credit card, or other financial account numbers.

Docket 43-3 at 3. Although that language is not included in RFP 2 itself, it still limits the production of information and supplies an adequate basis for the magistrate judge's decision to overrule Auto Owners' objection. Although the magistrate judge's order indicated the language was part of RFP 2 and not part of the general conditions, there is no practical difference in this case. Thus, the court is not left with a definite and firm conviction that the magistrate judge made a substantive mistake that requires reversal.

Finally, Auto Owners objects to the magistrate judge's determination that Auto Owners waived its time frame objection. Docket 53 at 20. Auto Owners claims that its time frame objection "was implicit in Auto-Owners' relevance arguments and was explicitly raised in Auto-Owners' objections [to the initial discovery requests]." *Id.* Implicit arguments, particularly boilerplate arguments, are insufficient to preserve an issue unless they are specifically argued and developed. The magistrate judge did not err by deeming that argument waived.

Furthermore, because plaintiffs' claim alleges a practice or policy of minimizing claims, evidence supporting that claim may well be found in documents outside the period when plaintiffs' specific claim for benefits was being handled. *See* 8 Wright and Miller § 2008.5 (citing *Oppenheimer Fund*, 437 U.S. at 352) ("[O]lder information may often be relevant to the issues presented

in a case.").  Disputes over the burden imposed by discovery requests covering extended time periods "must be determined by reference to the general principles of Rule 26(b)(2)(C)." *Id.* Auto Owners presents no additional arguments to this court showing why the compelled discovery is unreasonably cumulative, duplicative, or inconvenient, why the burden of that discovery is out of proportion to the importance of plaintiffs' claims or the amount in controversy, or why Auto Owners' resources would be unnecessarily strained. Even if the court did not deem the time frame argument waived, it is not persuasive.

The magistrate judge's conclusions with respect to RFP 2 are not clearly erroneous or contrary to law. Thus, the court will not set aside the magistrate judge's order compelling production of documents responsive to RFP 2.

## 2.     Request for Production Number 5

RFP 5 requests all document related to compensation for all employees involved in roof-hail claims and their supervisors, up to the head of the claims department. Docket 43-3 at 9. The magistrate judge granted the motion to compel with respect to RFP 5. Auto Owners levels the same objections to the magistrate judge's ruling as it made to the order on RFP 2.

As discussed above, evidence of compensation is relevant to plaintiffs' bad faith claim. *See Torres v. Travelers Ins. Co.*, Civ. 01-5056-KES, 2004 U.S. Dist. LEXIS 31888, at *42-46 (D.S.D. Sept. 30, 2004) (reasoning that financial incentive programs were relevant to a bad faith claim and the issue of punitive damages). Plaintiffs have met their threshold burden, and Auto Owners'

argument regarding speculation is not persuasive. For the same reasons as RFP 2, RFP 5 is not overbroad as to the employees included or the time frame covered in the request. Auto Owners has not shown that RFP 5 is unfairly burdensome, that it is unnecessarily cumulative or duplicative, that the information sought is available in a more convenient form, or that the cost is out of proportion to the value of the discovery. Thus, Auto Owners' objections to the magistrate judge's order on RFP 5 are overruled for the same reasons as stated with respect to RFP 2, and the court will not set aside the magistrate judge's order.

## CONCLUSION

Genuine questions of material fact exist on plaintiffs' bad faith and punitive damages claims, and summary judgment is inappropriate on those issues. Because plaintiffs failed to plead their unfair trade practices claim with specificity, judgment on the pleadings is granted on that claim. Auto Owners' motion for a separate trial on the contract claim and to stay discovery pending resolution of the dispositive motions is denied as moot. Plaintiffs have made a threshold showing of relevance for discovery of the information requested in RFP 2 and RFP 5, and Auto Owners has not shown that the magistrate judge's order was clearly erroneous or contrary to law. Accordingly, it is

ORDERED that defendant Auto Owners Insurance Company's motion for summary judgment on the issues of bad faith and punitive damages (Docket 21) is denied.

IT IS FURTHER ORDERED that defendant Auto Owners Insurance Company's motion for judgment on the pleadings on the issue of unfair trade practices (Docket 24) is granted.

IT IS FURTHER ORDERED that defendant Auto Owners Insurance Company's motion to bifurcate and stay discovery (Docket 26) is denied as moot.

IT IS FURTHER ORDERED that defendant Auto Owners Insurance Company's objections to the magistrate judge's order (Docket 53) are overruled.

Dated May 5, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE